218 So.2d 185 (1969)
NATIONWIDE MUTUAL INSURANCE COMPANY, Appellant,
v.
Anne T. MASON et al., Appellees.
No. 1036.
District Court of Appeal of Florida. Fourth District.
January 27, 1969.
Rehearing Denied February 18, 1969.
John R. Beranek, of Jones, Adams, Paine & Foster, West Palm Beach, for appellant.
Ronald E. Jones, of Winters, Brackett, Lord & Potter, West Palm Beach, for appellee Constance Leah Ullery.
WARREN, LAMAR, Associate Judge.
This is an appeal from an order entered after the separate trial of a third party complaint which had been severed from the main suit.
The appellant, Nationwide Mutual Insurance Company, was one of several third party defendants, and the appellee, Constance Leah Ullery, was the third party plaintiff and one of the defendants in the original action, which involved an automobile accident. Numerous questions arose as to insurance coverage by two insurance carriers and a producer of record.
After considerable pleading the lower court ordered a nonjury trial on issues raised by the third party complaint of Ullery against Nationwide, who wrote an assigned risk (F.S. § 627.351, F.S.A.) policy insuring Ullery, against certain persons as trustees of Amison-Knapp Insurance, Inc., a dissolved Florida corporation, Ullery having applied to Amison-Knapp for insurance, and against Ivan L. Knapp, individually, with whom she dealt. The issues were whether Nationwide had a liability insurance policy in effect at the time of the accident or whether Knapp was personally liable.
In its order the court recited the facts as found in a stipulation of the parties and in *186 evidence adduced before the court, and held that the policy issued by Nationwide to Ullery was in effect and afforded her coverage when the accident occurred. We affirm.
The appellee Miss Ullery made application through Amison-Knapp for liability insurance under the Florida Assigned Risk Plan and the application was forwarded to the Jacksonville office of the Plan; thereafter, the liability risk was assigned to Nationwide and to it was transmitted Miss Ullery's deposit premium of $45. On August 20, 1964, Nationwide sent its form 101-B (required under the rules of the assigned risk plan) to Amison-Knapp, with copy to Miss Ullery, which noted that, "We have * * * issued the above policy in his behalf and will forward it to you as his agent when properly countersigned. In order to keep this insurance in effect, it will be necessary for him to forward to us, on or before the payment date shown above [9-24-64], the balance due, which is $11.00 * * *. If he fails to forward this amount by the payment date, we will have no alternative but to cancel this policy." Immediately after Miss Ullery received her copy of the form she paid the sum of $11 to Amison-Knapp and received a receipted invoice therefor; the funds were not forwarded to Nationwide however until after the payment date of September 24, 1964. Miss Ullery never had any dealings with Nationwide.
On October 2, 1964, Nationwide mailed a cancellation notice to Amison-Knapp with copy to Miss Ullery advising that the policy would be cancelled October 13th because of nonpayment of premiums. On the same date Ivan Knapp executed a check for $11, payable to Nationwide, which was sent October 2nd or 3rd, and which was received by Nationwide October 5th and deposited. Amison-Knapp received the cancellation notice on October 5th and on the same day wrote requesting Nationwide to reinstate the policy, stating:
"* * * The insured paid us the balance and we still had the file pending. I am sorry this happened but since hurrican [sic] Cleo, our work load has been heavy.
"Please issue reinstatement notice on this policy. I am returning check A61-717808 in the amount of $28.10."
Nationwide by its drafts returned the sums of $11 and $28.10 on October 9th, and on October 12th Amison-Knapp returned the two drafts requesting reinstatement of the policy. On October 19th Nationwide wrote Miss Ullery that her premium payment was received too late to prevent cancellation of her policy, a copy of the letter with the checks being sent to Amison-Knapp.
The accident giving rise to this litigation occurred October 21, 1964.
Miss Ullery testified that after she got the notice advising that the policy would be cancelled she asked Amison-Knapp why the policy was being cancelled and was told that, "it was due to a hurricane, the papers and the money got misplaced and but not to worry, that everything would be all right. They would straighten it up." She further testified that all her dealings were with the agency and that she gave the $11 to them the next day after receiving the form copy stating that such additional amount was due. Miss Ullery's sister testified that she also called the agency, her sister (appellee) being at work when the mail came, and that Mrs. Amison stated to her that during the hurricane everything got mixed up and that she was sure that they would straighten it out.
The rules of the assigned risk plan are found in a pamphlet which was attached to the stipulation of facts as an exhibit. Section 14 of the rules sets out a form of premium information letter which must be furnished by the carrier to the producer of record and to the insured, in the event the carrier finds the risk eligible for insurance. Nationwide complied with the rules by addressing its form letter 101-B to Amison-Knapp, as set out above. The first requirement on the rules form is "Letterhead," *187 but the form mailed contained no letterhead. The form mailed also advised that it would be necessary for the applicant to forward "to us," on or before the payment date, the balance due of $11, yet the form failed to contain the address of Nationwide. The form of letter in the rules shows a closing of the information letter by the use of the words "Very truly yours," however, the form mailed had typed only the name, "Nationwide Mutual Insurance Company." Directly below and centered under the typed name was the language, "Your commission check will be mailed within the next 35 days. Pease do not deduct commission in advance." And centered below these two sentences, there appeared: "Note: Please return a copy of this letter with your remittance or reply." Neither of the above quoted statements are a part of the rules form. The form mailed does show a copy to Miss Ullery, which the rules form requires.
It may be fairly said that the letter is largely one of instructions to the agency, not to the insured; any directions to her are confusing and contradictory of other language in the form. In discussing the letter the lower court in its order stated:
"* * * Admittedly, Nationwide calls Amison the insured's agent in said letter, copy of which went to Ullery. However, here we have an `insurance agent' being sent the policy for delivery to the insured with at least implied authority to collect the premium. Amison received the policy from Nationwide, delivered it to Ullery, and accepted the balance due on the premium. Under these circumstances, the payment to Amison made the policy completely effective, and Nationwide's subsequent cancellation was void. 14 Appleman, Insurance Law & Practice, § 7992.
"`The receipt of premiums by an agent appointed either expressly or by implication by the insurer to deliver the policy and collect premiums, has been considered a receipt of such premiums by the insurer. The fact that such agent, authorized to collect premiums, fails to remit them to the insurance company, does not deprive the insured of his protection. The majority rule seems to be that from the insured's point of view it is immaterial whether such agent fails to remit the premiums to the insurer until after the loss or at all; if the insured was entitled to rely upon such agent's apparent authority to receive premiums, the payment is a valid one, irrespective of actual receipt by the company.

"An interesting statement is also found in Conniff v. Detroit Fire & Marine Ins. Co., 183 Wash. 496, 48 P.2d 946, to the effect that:
"`* * * by the very fact of issuing a policy which requires, apparently, nothing but delivery and payment of premiums to put in force, the Company arms every man into whose hands it may come with the power to receive its money.'
"Viewing the matter from Ullery's standpoint, she did everything a prudent person would do. To her surely Amison had every appearance of an agent authorized to accept the premium payment. As between Ullery and Nationwide, the latter was in a far better position to obviate such a situation as we have here. It could have sent the policy directly to her and advised her to send the premium directly to them at a specific address. It might be noted that Nationwide's letter of August 20, 1964, doesn't even have its address on it. Thus, if one of two innocent people must suffer, it must fall upon the one who could best have prevented the occurrence."
The only comment we have to add to these is that under all of the circumstuces and under a reasonable interpretation of the form letter it was the natural, and perhaps obvious, thing for Miss Ullery to do  return to Amison-Knapp and pay them the balance due.
*188 In 3 Am.Jur.2d, Agency, § 21, it is said, "The question whether an agency has been created is ordinarily a question of fact which may be established the same as any other fact, either by direct or by circumstantial evidence; and whether an agency has in fact been created is to be determined by the relations of the parties as they exist under their agreements or acts, with the question being ultimately one of intention." And in 44 C.J.S. Insurance § 141, p. 802 it is stated that, "The general rule that the same person cannot act as agent for both the company and insured is subject to some exceptions. The same person may act for the different principals in sepatate matters in which their interests are not conflicting and his duties not inconsistent."
The holding in American Casualty Company of Reading, Pa. v. Castellanos, Fla. App. 1967, 203 So.2d 26, seems applicable here. In that case the company had issued an automobile liability insurance policy under the assigned risk plan, pursuant to an application submitted by an agency, who collected the premium and who was designated as the producing agency. The policy was also delivered through the agency and two amendments to it were obtained by the agency. The insured was involved in an accident and he sent written notice to the agency within a few days but the company did not receive notice until many months later, contrary to the conditions of the policy. Recognizing that if an agency relationship existed for the purpose of notification it must have been one either imposed by law or implied in fact, the court held that the company had clothed the agency with apparent authority and that it would not be heard to deny the burden of its contract once having accepted the benefit thereof.
For the foregoing reasons the order appealed is hereby affirmed.
WALDEN, C.J., and REED, J., concur.