574 A.2d 664

**Arnold JOYNER and Ruth Joyner, Appellees,**

v.

**HARLEYSVILLE INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued March 7, 1990.

Filed May 7, 1990.

---

Debra G. Staples, Philadelphia, for appellant.

Claire D. Newman, Philadelphia, for appellees.

Before McEWEN, MONTEMURO and CERCONE, JJ.

MONTEMURO, Judge:

The single issue presented in this appeal is whether the "producer of record", who processes an application for insurance for an insured pursuant to the Pennsylvania Assigned Risk Plan, may be deemed to have "apparent authority" to receive premium payments on behalf of the assigned insurance carrier. We hold that under the circumstances of this case, the producer was an agent of the assigned insurer for the purpose of collecting premiums. Accordingly, we affirm the order of the trial court.

The parties submitted an agreed upon statement of facts to the trial court, each seeking an entry of judgment. Appellant Harleysville Insurance Company (Harleysville) appeals from an order granting judgment in favor of appellees, Arnold and Ruth Joyner (Joyners), in the amount of $30,383.70.

This case involves a claim by the Joyners for payment of basic loss benefits from Harleysville for injuries sustained in a motor vehicle accident on January 31, 1984. The basis for the insurance claim is an insurance policy which the Joyners held with Harleysville under the Pennsylvania No–Fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, No. 176, §§ 101–701, 40 P.S. § 1009.101 *et seq,* *repealed by* Act of Feb. 12, 1984, P.L. 26, No. 11, § 8(a) (No–Fault Act). Harleysville has denied the Joyners' claim, asserting that the policy of insurance had been cancelled thirty days prior to the date of the accident.

The relevant facts, as gleaned from the agreed upon statement of facts, are as follows. In September, 1982, Arnold Joyner went to a licensed insurance broker in Philadelphia trading under the name Seers Insurance Agency (Seers) and applied to the Pennsylvania Motor Vehicle In-

surance Plan, commonly known as the Assigned Risk Plan (Plan), for automobile insurance. Pursuant to the Plan, Mr. Joyner filled out a Pennsylvania Insurance Plan Application in which Seers was identified as the producer of record. Harleysville was designated by the Plan as the servicing insurance carrier for the Joyner policy. Harleysville issued a policy directly to Mr. Joyner, effective September, 1982. Mr. Joyner made all premium payments in cash to Seers; Seers then forwarded the payments in the form of Seers checks to Harleysville.

On September 10, 1983, when the policy was about to expire, Mr. Joyner accepted Harleysville's renewal offer by making a cash payment of $165.00 to Seers and signing a request for renewal in which he requested certain changes in his policy. The request for renewal was written on a message form bearing Seers' trade logo. Although Harleysville received the renewal request and a Seers check for $165.00 on September 15, 1983, as of September 16, 1983, Harleysville's books did not show receipt of the payment due on the renewal. Thus, Harleysville sent a cancellation notice to Mr. Joyner on September 22, 1983. In response to the cancellation notice, Mr. Joyner contacted Seers and was advised that a mistake had been made. Harleysville's records eventually reflected receipt of the $165.00 check and Harleysville rescinded the cancellation. Problems arose again, however, as the Seers $165.00 check was dishonored by the bank for insufficient funds. On October 17, 1983, Harleysville sent a cancellation notice to both Mr. Joyner and Seers, advising them that a certified check or money order was required to reinstate the policy. Mr. Joyner again contacted Seers and was assured that a mistake had been made. Harleysville received a replacement check from Seers on October 20, 1983 and subsequently rescinded the cancellation.

Although Mr. Joyner made two more premium payments to Seers for the policy, $200.00 in November, 1983 and $250.00 in December, 1983, Harleysville never received the payments from Seers. Thus, on December 13, 1983, Har-

leysville sent another cancellation notice to Mr. Joyner and Seers, to be effective January 1, 1984. Once again, Mr. Joyner went to Seers and questioned the Seers employee to whom he had made the cash premium payments. In Mr. Joyner's presence, the Seers representative purported to call Harleysville. The Seers representative then told Mr. Joyner that Harleysville had erred and that Mr. Joyner's policy was in effect. Mr. Joyner left Seers, believing that no further premium payment was due until February, 1984.

In fact, the telephone call was not actually placed to Harleysville and the assurances given to Mr. Joyner were false. Harleysville cancelled the Joyner policy on January 1, 1984 for non-receipt of premiums. On January 31, 1984, the Joyners and their daughter were involved in an automobile accident in which they suffered injuries requiring medical treatment. When Mr. Joyner attempted to report the accident to Seers, he learned that Seers had closed permanently. Mr. Joyner notified Harleysville of the accident and reported losses in the amount of $16,313.40. Harleysville denied liability on the claim for first party benefits on the grounds that no policy was in effect on the date of the accident.

Based upon these undisputed facts, the trial court held that Seers had apparent or implied authority to accept Mr. Joyner's premiums on behalf of Harleysville, and because Seers was clothed with authority to accept premiums on behalf of Harleysville, the payments made to Seers were good payments.

In arguing that the trial court erred in finding an agency relationship between Harleysville and Seers, Harleysville attaches special significance to the fact that the insurance policy was issued pursuant to the Assigned Risk Plan. Harleysville emphasizes that Harleysville was required to participate in the Plan under the No–Fault Act, and that an insurer participating in the Plan cannot choose who will be the producer under the Plan or choose those individuals whom the insurer will insure under the Plan.

The No–Fault Act required every owner of a motor vehicle which was registered or operated in Pennsylvania to provide security covering the motor vehicle for the payment of basic loss benefits and for the payment of liability for damages for bodily injury or death arising out of an accident. 40 P.S. § 1009.104(a). This security could be provided under an insurance policy with an insurer or through self-insurance with the approval of the insurance commissioner. *Id.* To ensure that the statutorily required coverage for no-fault benefits and tort liability damages would be available for all owners of motor vehicles, the No–Fault Act directed the insurance commissioner to implement a plan by which those individuals who could not obtain insurance through ordinary methods would be able to obtain insurance coverage on reasonable and not unfairly discriminatory terms. 40 P.S. § 1009.105(a)(1). The No–Fault Act provided that this goal could be accomplished via assignment of applicants among insurers, joint insuring or reinsuring arrangements, or any other method. *Id.*

Under the Act, all insurers writing no-fault benefits and tort liability coverage in Pennsylvania were required to participate in the Plan. 40 P.S. § 1009.105(a)(3). The Act envisioned that the financial burdens incident to insuring those individuals covered by the Plan would be equitably apportioned among all participating insurers required to write insurance coverage under the Plan. The Act permitted insurers to reach agreements as to the organization, administration and operation of the Plan and as to rate provisions under the Plan. *Id.* The Pennsylvania Assigned Risk Plan was the insurance industry's response to these legislative requirements.

Mr. Joyner, apparently unable to obtain insurance through the regular channels, applied to the Plan in accordance with the method established by the Plan. He went to the Seers Agency where he obtained and filled out the prescribed form entitled "Pennsylvania Automobile Insurance Plan Application," and submitted an advance premium payment of $510.00 for forwarding to the Plan by Seers.

The application, which named Seers as the producer, contained a clause located above the applicant signature line and printed in small type, which stated:

I designate as producer of record for this insurance the producer named in this application and I understand he is not acting as an agent of any Company for the purpose of this insurance.

Mr. Joyner signed his name on the signature line. Seers submitted the Joyner application and advance premium to the Plan. Harleysville was assigned by the Plan to service the Joyner policy, and in accordance with the Plan, Harleysville forwarded a policy directly to Mr. Joyner. Presumably, Harleysville also forwarded a copy of the policy declarations page to Seers, and sent commission checks to Seers within 30 days of receipt of the premiums due, in accordance with the Plan provisions. Mr. Joyner made all of his renewal and policy change requests and cash premium payments to Seers for forwarding to Harleysville.

■ Having carefully reviewed the particular facts of this case, the law of agency in Pennsylvania, and caselaw from other jurisdictions regarding the status of a producer of record in the assigned risk setting, we agree with the trial court's conclusion that Seers had apparent authority to receive premiums on behalf of Harleysville.

■ The doctrine of apparent authority has been incorporated into the principles of agency law in Pennsylvania. *See Bolus v. United Penn Bank,* 363 Pa.Super. 247, 525 A.2d 1215 (1987), *appeal denied* 518 Pa. 627, 541 A.2d 1138 (1988); *Stallo v. Insurance Placement Facility of Pennsylvania,* 359 Pa.Super. 157, 518 A.2d 827 (1986), *appeal denied* 515 Pa. 609, 529 A.2d 1082 (1987). Apparent authority exists where a principal, by words or conduct, leads people with whom the alleged agent deals to believe that the principal has granted the agent the authority he or she purports to exercise. *Bolus v. United Penn Bank, supra; Stallo v. Insurance Placement Facility of Pennsylvania, supra.*

The third party is entitled to believe the agent has the authority he purports to exercise only where a person of ordinary prudence, diligence and discretion would so believe. *Friedman v. Kasser*, 332 Pa.Super. 475, 481 A.2d 886 (1984). Thus, a third party can rely on the apparent authority of an agent when this is a reasonable interpretation of the manifestations of the principal. *The Trident Corporation v. Reliance Insur. Co.*, 350 Pa.Super. 142, 150, 504 A.2d 285, 289 (1986).

*Bolus v. United Penn Bank, supra* 363 Pa.Super. at 262, 525 A.2d at 1222.

█ Although the question of whether a principal-agent relationship exists is ordinarily one of fact for the jury, where the facts giving rise to the relationship are not in dispute, the question is one which is properly decided by the court. *Breslin by Breslin v. Ridarelli*, 308 Pa.Super. 179, 454 A.2d 80 (1982), *citing Juarbe v. City of Philadelphia*, 288 Pa.Super. 330, 335, 431 A.2d 1073, 1076 (1981).

█ It is well settled that an insurance broker may act as an agent of an insurance company in the collection of the premium from the insured and remittal of the premium to the insurance company. *Transcontinental Oil Co. v. Atlas Assurance Co.*, 278 Pa. 558, 123 A. 497 (1924); *Pearl Assurance Co. v. National Ins. Agency*, 150 Pa.Super. 265, 28 A.2d 334 (1942). The cases of *Taylor v. Crowe*, 444 Pa. 471, 282 A.2d 682 (1971) and *Sands v. Granite Mutual Insurance Co.*, 232 Pa.Super. 70, 331 A.2d 711 (1974) define the bounds within which an agency relationship between an insurance broker and an insurer may be found.

In *Taylor v. Crowe, supra,* an insurance broker had been advising the insureds for many years of the insurance needs for the various businesses in which the insureds were engaged. The insureds wanted to obtain insurance coverage, including protection against landslides, for a bowling alley which they owned. The broker assured the insureds that the desired coverage could be obtained at a low premium and then placed the coverage with a group of insurance

companies through the insurance group's agent. When a landslide damaged the building six months later, the insureds learned that the policy did not provide protection against landslides. The insureds sued the group of insurance companies and the insurance broker based on a theory of negligent misrepresentation as to the extent of the insurance coverage. Our Supreme Court held that the evidence showed that the broker was not acting as an agent for the insurance companies at the time the misrepresentations were made. *Taylor v. Crowe, supra* 444 Pa. at 472–74, 282 A.2d at 682–83. Testimony at trial showed that the insureds relied on the broker as a representative of their company to procure the "best" insurance he could get. On the basis of that testimony, the Court found the case to be controlled by *Taylor v. Liverpool,* 68 Pa.Super. 302, 304 (1917):

> Where a person desiring to have his property insured applies not to any particular company or its known agent, but to an insurance broker, permitting him to choose which company shall become the insurer, a long line of decisions has declared the broker to be the agent of the insured; not the insurer.

*Taylor v. Crowe,* 444 Pa. at 475, 282 A.2d at 683, *citing Taylor v. Liverpool, supra* at 304. The Court also noted that for a broker to be found to be an agent of the insurer there must be some evidence which could be inferred as an authorization by the company to the broker. Since there was no evidence of authorization, no agency relationship could be established between the broker and the insurance companies. *Taylor v. Crowe,* 444 Pa. at 475, 282 A.2d at 683–84. The Court noted that the broker had no contact with the insurers, and that he did not even know with which companies the coverage was placed. *Id.*

In *Sands, supra,* the plaintiff went to an insurance broker with whom he had previously dealt to obtain auto insurance. The plaintiff indicated that he desired to be fully insured, and since the broker was familiar with the plaintiff, the broker had the plaintiff sign a blank insurance

application, leaving the broker to fill in all of the necessary information. Although the broker accepted the premium payment and placed the insurance with the defendant, Granite Mutual Insurance Company, the broker failed to obtain uninsured motorist coverage for plaintiff. During the next two years, plaintiff paid all premiums on the policy directly to the broker, who also processed a renewal of the policy for plaintiff at the end of the first year. Toward the end of the second year of the policy, plaintiff made an installment payment of the premium to the broker in order to renew the policy, and within two months, plaintiff paid to the broker the premium balance in full. The broker failed to forward plaintiff's renewal application and premium payments to the insurance company. Plaintiff discovered the broker's default when he was injured in an automobile accident involving an uninsured motorist and sought payment under the policy. This Court held that the broker had apparent, if not actual, authority to receive payments from plaintiff and bind Granite, and therefore, the payment of the premiums to the broker by the plaintiff was good payment. In finding that the broker had apparent authority to bind the insurer, the Court noted that the insurance policy listed the broker as an "authorized representative," and that the insurer permitted the broker to set rates and deduct its commissions directly from the premium payments as the broker received them. The Court noted that

> [i]t requires no extended discussion or citation of authorities to establish the proposition that a person authorized to deliver a policy of insurance and receive and receipt for the premiums is the agent of the company for that purpose, and the payment of the premium to him is good payment.

*Id.* 232 Pa.Super. at 78, 331 A.2d at 716, *quoting Thomas v. Western Ins. Co.,* 5 Pa.Super. 383 (1897).

Although neither *Taylor v. Crowe* nor *Sands* is directly on point, we find the *Sands* case to be applicable to our factual situation. In *Taylor v. Crowe, supra,* the broker had absolutely no contact with the insurers and the dispute

centered on the authority of the broker to bind the insurer regarding substantive provisions of the policy; thus, we find that *Taylor v. Crowe* is substantially different from this case. Although there are factual differences between the instant case and *Sands*, we find that *Sands* supports a finding that Seers was an agent of Harleysville in Seers' function of collecting premiums from Mr. Joyner. Harleysville was aware of the role that Seers had adopted, and approved of Seers' course of dealing to the extent that Harleysville accepted Mr. Joyner's renewal request through Seers and accepted Mr. Joyner's premium payments in the form of the Seers checks, rather than insisting upon direct payment by the Joyners. We hold that Seers had apparent authority to receive the premiums on behalf of Harleysville, and thus was Harleysville's agent for purposes of receiving and remitting the premium payments. Despite the language in the Plan application which denied any agency relationship between the producer and the assigned insurer, Harleysville knowingly permitted Seers to accept the premium payments and process Mr. Joyner's requests for changes in policy and renewal. Furthermore, Harleysville continued to permit Seers to receive and remit the premiums after Seers submitted the request for renewal and accompanying premium late and a Seers check was dishonored for insufficient funds. Thus, we find that the clause in the application denying an agency relationship is not dispositive of the question of the agency relationship between Harleysville and Seers.

Given the facts of this case, we find that Mr. Joyner acted as a reasonable person would under the circumstances. Having dealt with Harleysville strictly through the Seers agency in the past and having received no resistance from Harleysville regarding this manner of dealing, Mr. Joyner acted as a prudent person would when he received the cancellation notice and returned to Seers to inquire as to the source of the problem. Harleysville's acceptance of the premium payments, renewal request and policy changes from Seers would lead a reasonable person to believe that

Seers had apparent authority to accept premiums on behalf of Harleysville. We find that the payments made by Mr. Joyner were valid, irrespective of actual receipt by Harleysville. " 'Payment to insurer's agent, authorized or having apparent authority to receive the premium, is equivalent to payment to insurer; and the policy has its inception from the instant such payment is made. And it is no defense to the company that the agent has not remitted at all... ' " *Transcontinental Oil Co., supra* 278 Pa. at 563, 123 A. at 499, *quoting* 26 C.J. 62.

We agree with the views of the trial court that Harleysville was in a far better position to police Seers' conduct and prevent Seers' default. Harleysville could have insisted that all premiums be paid directly to Harleysville, particularly after becoming aware of Seers' penchant for remitting late premiums and dishonored checks. As the trial court aptly stated, "Harleysville, having accepted the benefit of doing business in Pennsylvania and the benefit of plaintiffs' premiums paid over before Seers' default, will not now be heard to deny the burden of its contract with plaintiffs." Trial Court Opinion at 7.

In reviewing cases from other jurisdictions dealing with a producer's authority to act as an agent of the carrier in the assigned risk setting, we find the case of *Nationwide Mutual Insurance Company v. Mason*, 218 So.2d 185 (Fla.Dist.Ct.App.1969), *cert. denied* 225 So.2d 912 (Fla.1969) to be factually similar to the case at hand. In *Nationwide*, the insured applied through an insurance agency for insurance under Florida's assigned risk plan and the agency, as the producer of record, forwarded the application and deposit premium to the Plan. The risk was assigned to the defendant insurance company. The company sent a notice to the producer and the insured which stated that the insured was to forward the premium balance to the assigned risk carrier and if the insured failed to forward the balance by the payment date, the insurer would cancel the policy. Immediately after the insured received the notice, she paid the balance to the producer for forwarding to the

assigned carrier, but the producer did not forward the funds until after the payment due date. A cancellation notice to the producer and the insured was mailed on the same date that the producer executed and sent a check to the insurer for the premium balance. After the insured received the cancellation notice, she contacted the producer to find out why the policy was being cancelled; the producer explained that the paperwork and money had gotten misplaced due to a hurricane and assured her that "everything would be all right." *Id.* 218 So.2d at 186. The insurer refused to accept the late premium, however, and cancelled the insured's policy and returned the check to the producer. Under these facts, the court held that the payment of the premium by the insured to the producing agency was effective against the insurer, notwithstanding the agency's failure to forward the premium to the insurer before the due date. *Id.* at 187–88. Similarly, we find that Seers was authorized to receive premiums on behalf of Harleysville, given Seers' dealings with Harleysville before Seers' default.

Harleysville cites an impressive list of cases from other jurisdictions which have held that a producer under an assigned risk plan who submits the application to the assigned risk plan, and who thereafter forwards the policy to the insured or accepts premiums from the insured is not the agent of the insurer. Having carefully reviewed those cases, we find that none of them deal with the precise question presented here, that is, whether the producer may be an agent of the insurer purely for purposes of receiving and remitting premiums, thus binding the insurer in the event of the producer's default in remitting the premiums. The out-of-state case which we find to be most on point is *Nationwide Mutual Ins. Co. v. Mason, supra,* which supports a finding of apparent agency under the facts of this case. In fact, several of the cases cited by Harleysville lend support for the proposition that the producer may be an agent of the insurer for purposes of receiving and remitting premiums. *See Jackson & Jackson, Inc. v. Louisiana*

*Offshore Insurance Agency, Inc.*, 508 So.2d 875, 877 (La. App. 5th Cir.1987), *writ denied* 512 So.2d 1179 (La.1989) (holding that in context of worker's compensation assigned risk pool, broker was insured's agent and broker "had no authority, apparent or otherwise, to represent or act for [insurer] except for premium collecting"); *Pearson v. Selected Risks Insurance Company*, 154 N.J.Super. 240, 381 A.2d 91, 93 n. 2 (1977) (acknowledging in a footnote that "[p]erhaps the assigned insurer may make the broker its agent for the collection of premiums"). Although in some situations the fact that a policy was issued pursuant to an assigned risk plan under which the insurer could not choose the producer of record may determine the question of agency, under the facts of this case, our finding of Seers' apparent authority is not negated by the fact that the policy was issued pursuant to the Plan. Although Harleysville could not choose the producer under the Plan, Harleysville could have established another means of collecting the premiums.

Harleysville quotes language from *Pearson, supra,* which holds that the producer in the assigned risk situation does not become an agent of the insurer for the purpose of writing additional business for the assigned risk by the insurer, and that the broker does not "speak" for the insurer. We simply note that the issue in this case does not involve a broker/producer's capacity to write additional business for the insured, or to make representations on behalf of the insurer regarding substantive provisions of the policy or the effective date of the policy, but instead involves a producer's capacity to act as an agent for purposes of collecting premiums.

We find that under the facts of this case, Seers was an agent of Harleysville for the purpose of receiving and remitting the Joyner premiums, and thus Mr. Joyner was entitled to rely on Seers' apparent authority to receive the premiums. Accordingly, we affirm the order of the trial court.

Order affirmed.