518

## DeFranca v. Trans-Fleet Concrete, Inc.

---

C.P. of Philadelphia County, March Term 2012, No. 2487

*Andrew J. DuPont, Priscilla Jiminez* and *Jonathan W. Miller*, for plaintiffs.
*Philip D. Priore, Jonathan D. Herbst, William H. Resch, Jr.* and *Thomas M. Keenan*, for defendants.

PANEPINTO, *J.*, Oct. 16, 2014—Defendant/appellant, Trans-Fleet Concrete, Inc., appeals this court's order of June 6, 2014, wherein this court denied the defendant's post-trial motion for a new trial.

## PROCEDURAL AND FACTUAL BACKGROUND

This negligence action arises out of a workplace accident which occurred on March 22, 2010. Plaintiff, Hildo F. DeFranca, was working for Girafa Construction which was contracted by Albino Concrete Construction Co. Inc. (Hereinafter "Albino") to build foundations and footings at new homes. On March 22, 2010, plaintiff was standing on top of a nine (9) foot wall holding the hose to pour cement. The hose from the concrete pump truck clogged three times that day. On the third time, the concrete pump truck operator increased the pressure on the pump to unclog it. However, he did not give a signal to the plaintiff for him to put the hose down and get out of the way. Plaintiff was still holding the hose when the concrete pump truck operator increased the pressure on the pump. Due to the additional pressure on the pump, the hose was

thrown from side to side and hit the plaintiff on the head. Subsequently, plaintiff fell off the wall he was standing on and dropped down nine (9) feet into a basement. Plaintiff sustained multiple injuries as a result of this incident.

Plaintiff identified the concrete pump truck that was owned by 5 Star Concrete Pumping, LLC (Hereinafter "5 Star") as the concrete pump truck involved in his accident. 5 Star was a concrete pumping service formed in 2007 by Mr. Franks and Mrs. Franks. Mr. Franks owned fifty-one percent (51%) and Mrs. Franks owned forty-nine percent (49%). Prior to forming 5 Star to provide concrete pump truck services, Mr. Franks owned and operated concrete pump trucks through his ready-mix concrete delivery business, defendant Trans-Fleet Concrete, Inc. (Hereinafter "Trans-Fleet"). Mr. and Mrs. Franks were the sole officers and executives of both defendant Trans-Fleet and 5 Star. Defendant Trans-Fleet and 5 Star shared a business address, employees, and operated out of the same office space. When customers called defendant Trans-Fleet, they could order concrete and a concrete pump truck all at once. The concrete was provided by defendant Trans-Fleet. Defendant Trans-Fleet employees would provide a concrete pump truck exclusively by 5 Star. Both businesses had separate invoicing systems, bank accounts, and tax returns. Mr. Franks personally trained all 5 Star concrete pump truck operators.

The trial commenced on November 18, 2013 and concluded on November 25, 2013, when the jury returned a verdict in favor of the plaintiffs, Hildo F. DeFranca, and

Maria F. DeFranca, and against defendant Trans-Fleet. The jury found that 5 Star was an agent of defendant Trans-Fleet at the time of plaintiff's accident on March 22, 2010. The jury determined that 5 Star and defendant Trans-Fleet were both negligent and their negligence was the factual cause of plaintiff's injuries. The jury attributed 50% of the liability to 5 Star and 50% to defendant Trans-Fleet. The Jury awarded plaintiff Hildo F. DeFranca damages in the amount of Two Million ($2,000,000.00) Dollars and awarded Two Hundred and Fifty Thousand ($250,000.00) Dollars to plaintiff Maria F. DeFranca for her loss of consortium in connection to the incident that occurred on March 22, 2010. The jury found Albino was not negligent. Plaintiffs settled their claims against Albino prior to counsels' closing arguments.

Plaintiffs timely filed a Motion for Delay Damages which this court granted in the amount of $63,590.62 to be added to the $2,250,000 jury verdict in accordance with an order dated June 6, 2014. Plaintiffs timely filed a post-trial motion to mold the verdict which this court granted as stated in an order dated June 6, 2014. This court further ordered that judgment be entered in the amount of $2,313,590.62 in the plaintiffs' favor and against defendant Trans-Fleet to reflect its own negligence and its liability for the negligence of 5 Star. Defendant Trans-Fleet timely filed a motion for post-trial relief for a new trial which this court denied pursuant to an order dated June 6, 2014. On July 9, 2014, this court entered an order pursuant to Pa.R.C.P. 1925(b) requiring the defendant to

file a concise statement of errors complained of on appeal. Defendant Trans-Fleet timely filed its 1925(b) Statements and this opinion follows.

## ALLEGATIONS OF ERROR

Defendant Trans-Fleet's Rule 1925(b) statement raises numerous allegations of error on the part of this trial court in denying the defendant's request for a new trial. This trial court opinion will address the allegations of error in points 1 through 6, which are as follows:

1. The trial court erred in submitting to the jury the question of whether Trans-Fleet Concrete, Inc. was liable as the principal of a non-party agent. Submission of the question to the jury had no legal basis, as the theory of agency and the identity of the agent had not been properly pleaded and were added to the case late, thereby prejudicing Trans-Fleet Concrete, Inc. Submission of the question to the jury also had no factual basis, since there was insufficient evidence that an agency relationship existed.

2. The trial court erred in allowing the jury to consider whether vehicles and operators involved in the accident belonged to Trans-Fleet Concrete, Inc. and/or 5 Star Concrete.

3. The trial court erred in excluding Global Position System evidence confirming that no vehicle owned or controlled by Trans-Fleet Concrete, Inc. or its alleged agent was in the vicinity of the incident site at the time

it occurred.

4. The trial court erred in allowing the jury to consider whether there was negligent training by Trans-Fleet Concrete, Inc.

5. The trial court erred in denying the Motion for Summary Judgment of Trans-Fleet Concrete, Inc.

6. The trial court erred in adding a non-party, 5 Star Concrete, to the verdict sheet and then granting plaintiff's motion to mold the verdict to eliminate the non-party's percentage of liability, when the theory of agency and the identity of the agent had not been properly pleaded and were added to the case late, thereby prejudicing Trans-Fleet Concrete, Inc.

## DISCUSSION

Defendant Trans-Fleet contends in error complained of on appeal number 1 that this trial court erred in submitting to the jury the question of whether Trans-Fleet was liable as the principal of a non-party agent. Defendant Trans-Fleet argues that the submission of the question to the jury had no legal basis because the theory of agency and the identity of the agent had not been properly plead. The purpose of the pleadings is to place the defendants on notice of the claims which they will have to defend. *McClellan v. Health Maintenance Organization of Pennsylvania*, 413 Pa.Super. 128 (Pa. Super. 1992). In determining whether a particular paragraph in a complaint has been stated with the necessary specificity, such paragraph must be read

in context with all other allegations in that complaint. *Yocoub v. Lehigh Valley Medical Assoc.*, 805 A.2d 579, 589 (Pa. Super. 2002). Only then can the court determine whether the defendant has been put upon adequate notice of the claim against which he must defend. *Id.* For the allegations in a complaint to be considered sufficient to allege an agency claim, the allegations must both identify the agent by name or an appropriate description and set forth the agent's authority and how the tortuous acts of the agent fall within the scope of that authority. *Ettinger v. Triangle-Pacific Corp.*, 799 A.2d 95, 109 (Pa. Super. 2002).

This trial court read the plaintiffs' complaint in its entirety and determined that the theory of agency and the identity of the agent were properly pleaded to give defendant Trans-Fleet adequate notice as to the agency allegations. In paragraph 9 of the plaintiffs' complaint, plaintiffs allege that the defendants "acted through their agents, servants, or employees, who were acting within the scope of their employment on the business of the defendants." Paragraph 14 of the plaintiffs' complaint alleged that "the cement was pumped from and through a cement truck and cement pump truck owned, operated and controlled by Albino Concrete, John Albino, Trans-Fleet, and Silva." Furthermore, paragraph 23 of the plaintiffs' complaint pleads that the defendants "by and through their agents, servants, workers, and/or employees, were negligent including, but not limited, to properly operate the cement truck, hose and equipment and failing to properly

prepare, prime, and control the cement pump truck, hose, equipment and load." *See,* complaint ¶23(h)(i).

Although 5 Star was not specifically identified by name, the plaintiffs' complaint provided defendant Trans-Fleet with an appropriate description as to the identity of the agent. The plaintiffs' complaint alleged that the plaintiff was injured by the equipment of a cement pump truck that was owned by defendant Trans-Fleet. Mr. and Mrs. Franks were the sole officers and executives of defendant Trans-Fleet and 5 Star. N.T. Trial, 11/19/2013, at 92, 93. Defendant Trans-Fleet owned and operated concrete pump trucks in the years 2005 and 2006. N.T. Trial, 11/19/2013, at 93. In 2007, Mr. and Mrs. Franks created 5 Star when they bought several pump trucks. N.T. Trial, 11/19/2013, at 95. In March of 2010, defendant Trans-Fleet exclusively used 5 Star's cement pump trucks when a customer called defendant Trans-Fleet. N.T. Trial, 11/20/13, at 83, 85. Defendant Trans-Fleet's website described 5 Star as its "sister company." N.T. Trial, 11/20/13, at 83. Upon reading the plaintiffs' complaint as a whole, defendant Trans-Fleet should have known that the only possible agent that the plaintiffs would be referring to was 5 Star.

If the complaint did not identify the agents with enough specificity for the defendants to have adequate notice, the defendant could have filed a preliminary objection in the nature of a request for a more specific pleading or moved to strike that portion of the plaintiff's complaint. *Yocoub v. Lehigh Valley Medical Assoc.,* 805 A.2d 579, 589 (Pa. Super. 2002). When the defendant did not timely call the

alleged lack of specificity to the trial court's attention by filing a preliminary objection to request a more specific pleading, it demonstrated to the court that the defendant understood the allegations of the complaint well enough to deny it in its answer. *Id.* at 589-590. The defendant cannot wait until the eve of trial to contest the specificity of the complaint because it did not give the plaintiffs an opportunity to file an amended complaint. *Id.* at 590. Under these circumstances, any objection to the lack of specificity of the complaint had been waived. *Id.* Here, defendant Trans-Fleet did not file a preliminary objection to request a more specific pleading or a motion to strike the agency allegations that were found in the plaintiffs' complaint. Instead the defendant filed a motion in limine on November 12, 2013 to preclude all evidence and testimony regarding 5 Star and the theory of agency. This trial court denied defendant Trans-Fleet's motion in limine on November 18, 2013 and the trial began the same day. By not filing preliminary objections to the theory of agency and waiting for a few days before the trial to address this matter, the defendant waived any objection to the specificity of the agency allegations in the plaintiffs' complaint.

Defendant Trans-Fleet also argues that the submission of the question to the jury lacked a factual basis since there was insufficient evidence that an agency relationship existed. An agency relationship may be created by any of the following: (1) express authority, (2) implied authority, (3) apparent authority, and/or (4) authority by estoppel.

*Bolus v. United Penn Bank*, 525 A.2d 1215, 1221 (Pa. Super 1987). Express authority is directly granted by the principal to bind the principal as to certain matters. *Id.* Implied authority exists where the agent's actions are proper and usual in the exercise of the agent's express authority. *Id.* Apparent authority exists where the principal, by word or conduct, leads people with whom the alleged agent deals to believe that the principal has granted the agent the authority with which the agent purports to exercise. *Turner Hydraulics, Inc. v. Susquehanna Construction Corp.*, 414 Pa. Super. 130, 136 (Pa. Super. 1992). Authority by estoppel occurs when the principal fails to take reasonable steps to disavow the third party of their belief that the purported agent was authorized to act on behalf of the principal. *Turnway Corp. v. Soffer*, 461 Pa. 477 (Pa. Super. 1975). The question of whether a principal agent relationship existed is ordinarily one of fact for the jury. *Joyner v. Harleysville Insurance Co.*, 574 A.2d 664, 668 (Pa. Super. 1990). If the facts giving rise to the relationship are not in dispute, then the question can be properly decided by the court. *Id.*

Here, the facts that were presented to the Jury were in dispute, thereby, this trial court did not err in allowing the Jury to properly determine whether an agency relationship existed between defendant Trans-Fleet and 5 Star. Defendant Trans-Fleet presented the testimony of Mr. and Mrs. Franks who were the sole officers and executives of defendant Trans-Fleet and 5 Star. N.T. Trial, 11/19/2013, at 92, 93. Mrs. Franks testified that defendant

Trans-Fleet delivered ready-mix concrete and 5 Star was a concrete pumping service. N.T. Trial, 11/22/2013, at 22, 23. Mrs. Franks testified that both companies had separate invoicing systems, bank accounts, tax returns, pricing, telephone numbers, and websites. N.T. Trial, 11/22/2013, at 23. On cross examination, Mrs. Franks testified that the business address for defendant Trans-Fleet and 5 Star was the same and they operated out of the same office. N.T. Trial, 11/20/2013, at 82. There was one sign outside of that business address that advertised the businesses of both defendant Trans-Fleet and 5 Star. N.T. Trial, 11/20/2013, at 83. The employees for defendant Trans-Fleet were the same employees that generated invoices and answered the phones for 5 Star. N.T. Trial, 11/20/2013, at 83. In March of 2010, when customers called defendant Trans-Fleet, they could order concrete and a concrete pump truck all with one phone call. N.T. Trial, 11/20/2013, at 83. The concrete was provided by defendant Trans-Fleet. N.T. Trial, 11/20/2013, at 83. Then, defendant Trans-Fleet's employees provided a concrete pump truck exclusively from 5 Star. N.T. Trial, 11/20/2013, at 84-85. As the president of defendant Trans-Fleet, Mr. Franks provided the only training that was required to operate 5 Star's concrete pump trucks. N.T. Trial, 11/19/2013, at 93, 98. Mr. John Leal, the owner of Albino, testified that when he hired defendant Trans-Fleet in 2010 to deliver concrete and a concrete pump truck, he thought that defendant Trans-Fleet supplied both the concrete and concrete pumps. N.T. Trial, 11/18/2013, at 88-89. As the evidence demonstrated at trial and was briefly summarized above, there was

sufficient evidence presented which would lead the Jury to determine an agency relationship existed. Since there was a factual dispute regarding the agency relationship between defendant Trans-Fleet and 5 Star, the question was properly submitted to the Jury. Therefore, this trial court did not err and defendant Trans-Fleet's contention of error number 1 is without merit.

Similarly, defendant Trans-Fleet contends in error complained of on appeal number 6 that this trial court erred in adding 5 Star to the jury verdict sheet when the theory of agency and the identity of the agent had not been properly pleaded and were added to the case late. As discussed in great detail in defendant Trans-Fleet error complained of on appeal number 1 (see above), this trial court determined that the theory of agency and the identity of the agent were properly pleaded and no prejudice to defendant Trans-Fleet resulted. Based on that determination, this trial court properly instructed the jury with the standard jury charge 6.00, 6.10, 6.20 regarding agency law and vicarious liability based upon apparent agency or agency by estoppel. The Jury had to determine whether 5 Star was the agent of defendant Trans-Fleet at the time of the accident. The jury also had to decide if 5 Star was negligent and whether that negligence was the factual cause of the plaintiff's injuries. In order for this jury to provide a clear answer to these questions, this trial court properly included 5 Star on the jury verdict sheet.

Defendant Trans-Fleet's error complained of on appeal number 6 further argues that this trial court erred

in granting the plaintiffs' motion to mold the verdict to eliminate the percentage of liability the jury attributed to 5 Star. On November 25, 2013, the jury returned a verdict in favor of the plaintiffs and against defendant Trans-Fleet in the amount of $2,000,000 for plaintiff Hildo F. DeFranca and $250,000 for plaintiff Maria F. DeFranca. The jury attributed 50% of the liability to 5 Star and 50% to defendant Trans-Fleet. A trial court has the power to mold a jury's verdict to conform to the clear intent of the jury. *House of Pasta, Inc. v. Mayo*, 449 A.2d 697, 701 (Pa. Super. 1982). On June 6, 2013, this trial court entered judgment in favor of plaintiffs and against defendant Trans-Fleet in the amount of $2,313,590.62 (total amount included $63,590.62 in delay damages) to reflect defendant Trans-Fleet's direct negligence and its liability for the negligence of 5 Star which was found by the jury to be the agent of defendant Trans-Fleet. This trial court charged the Jury that, "The plaintiff claims that 5 Star concrete pumping was the agent of the defendant Trans-Fleet Concrete, Inc., which the latter denies." N.T. Trial, 11/25/2013, at 99. Question 1 on the jury verdict sheet asked the jury whether 5 Star was an agent of defendant Trans-Fleet at the time of the plaintiff's accident. The jury answered "yes" to that question. This trial court charged the Jury with the standard jury charge 6.10 regarding the scope of agency authority. This trial court further explained to the jury, "If you find that 5 Star concrete pumping was acting within the scope of its authority with the principal, Trans-Fleet concrete is bound by and liable for the acts of 5 Star concrete pumping." N.T. Trial, 11/25/2013, at

101. Before the jury left for deliberations, this trial court informed them that they would be able to ask questions regarding the evidence and the law that was presented throughout the trial. The jury did not ask any questions relating to agency law or the liability of defendant Trans-Fleet if 5 Star was found to be its agent and also negligent. Therefore, the Jury was aware that defendant Trans-Fleet would be bound and liable for the acts of 5 Star. The jury found 5 Star was negligent and its negligence was the factual cause of the plaintiff's injuries. Therefore, this trial court molded the verdict and Judgment was properly entered against defendant Trans-Fleet to reflect the clear intent of the jury to hold defendant Trans-Fleet liable for its own negligence as well as the negligence of its agent, 5 Star. Thus, defendant Trans-Fleet's contention of error number 6 is without merit.

Defendant Trans-Fleet contends in error complained of on appeal number 2 that this trial court erred in allowing the Jury to consider whether vehicles and operators involved in the accident belonged to defendant Trans-Fleet and/or 5 Star. During the trial, ample evidence was presented that the 5 Star concrete pump truck was the truck that caused the plaintiff's injury and that a concrete delivery truck owned by defendant Trans-Fleet was at the worksite at the time of the injury. Plaintiff testified that on the day of his fall the pump truck was yellow. N.T. Trial, 11/19/2013, at 16-17. He also identified the 5 Star concrete pump truck in a photograph that was marked as Exhibit P-4 as a true and accurate depiction of the pump truck involved

in his accident. N.T. Trial, 11/19/2013, at 27. On cross examination, the plaintiff clarified that when he was asked the color of the pump truck in which he replied yellow, he was referring to the boom which is the part of the pump truck that he was holding onto. N.T. Trial, 11/19/2013, at 44. Mrs. Franks, the secretary and treasurer of Trans-Fleet and the Forty-Nine percent (49%) owner of 5 Star, testified that in March of 2010, 5 Star's pump trucks were white with a yellow and green stripe and a yellow boom. N.T. Trial, 11/20/13, at 80, 86. Plaintiffs also read to the jury from the transcript of the deposition testimony of Mr. John Leal, the president of Albino Construction. Mr. Leal was asked by defendant Trans-Fleet whether he had any specific recollection of working with Trans-Fleet on the job where the plaintiff was injured. N.T. Trial, 11/22/2013, at 61. Mr. Leal responded that he wasn't positive as far as Trans-Fleet working on that job site but probably. N.T. Trial, 11/22/2013, at 61. The testimony of the plaintiff, Mrs. Franks, and Mr. Leal that was presented to the Jury was sufficient evidence that could reasonably lead a Jury to conclude that Trans-Fleet and/or 5 Star's vehicles and operators were involved in the plaintiff's accident on March 22, 2010. Therefore, defendant Trans-Fleet's error complained of on appeal number 2 is without merit.

Defendant Trans-Fleet contends in error complained of on appeal number 3 that the trial court erred in granting plaintiffs' motion in limine to exclude Global Positioning System (GPS) evidence regarding the location of Trans-Fleet and 5 Star vehicles on the day of the plaintiff's

accident. Defendant Trans-Fleet argued that the GPS records were not hearsay and should have been admitted at trial as a business record of Trans-Fleet. Pa.E.R. 803(6) allows the introduction of evidence of records made at or near the time, by or from information transmitted by a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the record. All these conditions are shown by the testimony of the custodian, or other qualified witness, or by certification that complies with Rule 902 (11) or Rule 902 (12). Pa.R.E. 803(6) allows the court to exclude business records that would otherwise qualify for exception to the hearsay rule if the "sources of information or other circumstances indicate lack of trustworthiness."

During oral argument at trial, defendant Trans-Fleet argued that the GPS data records were business records of Trans-Fleet because they were regularly kept by Mrs. Franks and she had personal knowledge of them. The GPS data records would have been introduced into evidence through the testimony of Mrs. Franks. Mrs. Franks would have testified that the GPS data records were maintained on Trans-Fleet's work computer, updated every day, and tracked where employees traveled each day and what truck and/or equipment was used. N.T. Trial, 11/21/2013, at 87. Defendant Trans-Fleet stated that Mrs. Franks had personal knowledge of the GPS data records because she had the Five Cubits Track It system open on her office computer every day and used the printout of the

information created by that system. N.T. Trial, 11/21/2013, at 87. Mrs. Franks did not create the GPS data records that defendant Trans-Fleet sought to introduce. N.T. Trial, 11/21/2013, at 89. Instead, she used the GPS data that was created by other companies. N.T. Trial, 11/21/2013, at 89. The GPS data records at issue contained GPS coordinates that were taken from a company that operated the satellite, who then forwarded the information to the Five Cubits Track It system which created the records that Mrs. Franks accessed on her Trans-Fleet computer to track the location of her employees, trucks, and equipment. N.T. Trial, 11/21/2013, at 89-90. This trial court found that Mrs. Franks did not have the requisite knowledge to establish the trustworthiness needed for GPS data records to be admitted into evidence as a business record under Pa.E.R. 803(6).

Defendant Trans-Fleet did not present a witness from the company that operated the GPS satellite or a witness from Five Cubits Track It system with knowledge that could be sufficient evidence for the trustworthiness of the GPS data records. Thus, the plaintiffs would have been precluded from cross examining the creator of the data about how the GPS tracking units were calibrated, whether the satellites were tested that day to determine if they were functional in the area where the incident occurred on March 22, 2010. Additionally, the plaintiffs would have been precluded from inquiring into how Five Cubits Track It gathered the information, created the GPS data records used by Mrs. Franks, and the reliability and

accuracy of those GPS data records. Therefore, this trial court properly excluded the GPS data records as they were inadmissible hearsay due to the lack of trustworthiness created by the absence of a witness with knowledge as to the creation and accuracy of these records. For that reason, defendant Trans-Fleet's contention of error number 3 is without merit.

Defendant Trans-Fleet argues in error complained of on appeal number 4 that this trial court erred in allowing the jury to consider whether there was negligent training by Trans-Fleet. Plaintiff testified that on the day of his fall, he was standing on top of the form holding the hose when the pump truck hose had clogged three times. N.T. Trial, 11119/2013, at 18. The third time the pump truck operator did not signal him to get out of the way and increased the pressure on the pump to unclog it. N.T. Trial, 11/19/2013, at 18. Plaintiff did not have time to put the pump down and get out of the way. N.T. Trial, 11/19/2013, at 22. When the operator put extra pressure on the pump, the pump unclogged but the hose was thrown from side to side and hit the plaintiff on the head. N.T. Trial, 11/19/2013, at 22. The plaintiffs presented the testimony of Mr. Thomas Cocchiola, P.E., an expert in the fields of mechanical and safety engineering. N.T. Trial, 11/19/2013, at 73. Mr. Cocchiola testified that the American Concrete Pumping Association[1] manuals which address safety procedures regarding clogs and hose whipping states that the pump

_____

1. The American Concrete Pumping Association is a trade organization that deals with concrete pumps and concrete pump safety. (79)

operator should stop the pump, get the people out of the way, and try to jog it back and forth to try and release or reduce or remove the clog, but ultimately shut it down, dissipate pressure, and then disassemble the lines and clean them out. N.T. Trial, 11/19/2013, at 81. The testimony of plaintiff indicated that the pump truck operator did not signal the plaintiff to get out the way and increased the pressure which caused the hose whipping. Mr. Cocchiola testified to a reasonable degree of mechanical and safety engineering that the pump truck operator did not meet the standard of care as described by the American Concrete Pumping Association manuals. N.T. Trial, 11/19/2013, at 86. He further testified that the concrete pump truck operator did not follow what basically is the industry custom and practice with respect to operating the pump and attending to a clog. N.T. Trial, 11/19/2013, at 86.

Mr. Franks, the owner of Trans-Fleet and the fifty-one percent (51%) owner of 5 Star, testified that as the president of Trans-Fleet he had been involved with providing training to operators of concrete pump trucks and continued to do so after 5 Star was created in 2007. N.T. Trial, 11/19/2013, at 93. Mr. Franks did not require the pump truck operators that worked for him to be tested on the owner's manuals before they began to operate the pump. N.T. Trial, 11/19/2013, at 98. Mr. Franks required them to go through training with him before they operated the pump on their own. N.T. Trial, 11/19/2013, at 98. A jury could reasonably conclude that Trans-Fleet had a duty to train the pump truck operators based on Mr. Franks'

testimony that the only training required to work at 5 Star is with him. A jury could also reasonably conclude that Trans-Fleet's training was negligent because the plaintiffs' mechanical and safety engineering expert, Mr. Cocchiola, testified that the pump truck operator's actions were below the standard of care. Based on the testimony of Mr. Franks and Mr. Cocchiola, this trial court did not err in allowing the jury to consider whether there was negligent training by Trans-Fleet. Therefore, defendant Trans-Fleet's contention of error number 4 is without merit.

Defendant Trans-Fleet next contends in error complained of on appeal number 5 that the trial court erred in denying defendant Trans-Fleet's motion for summary judgment. Prior to this trial, defendant Trans-Fleet filed a motion for summary judgment based on the contention that the plaintiffs could not produce any evidence that Trans-Fleet owned or operated a pump truck at the time of accident and that the plaintiffs' agency theory should be rejected. On November 18, 2013, judge Jacqueline Allen denied that motion. This allegation of error will not be addressed herein as it is in reference to a motion for summary judgment which was decided by judge Allen and not the trial judge, judge Panepinto. Consequently, the error complained of on appeal number 5 did not provide the basis for this court's denial of a new trial.

## CONCLUSION

For all the above reasons, this court's order of June 6, 2014, denying the defendant's post-trial motion for a new trial should be affirmed.