**DONEGAL MUTUAL INSURANCE COMPANY, Plaintiff**

v.

**Harry GROSSMAN, Suzy Grossman, & Pennco Trucking, Inc., Defendants**

v.

**Transco Co. of Indiana, the Mark Insurance Agency, Inc., and United States Fidelity & Guaranty Insurance Co., Third–Party Defendants**

No. 4:95CV1032.

United States District Court,
M.D. Pennsylvania.

Jan. 30, 2001.

---

**660**

Karen S. Coates, Thomas, Thomas & Hafer, Harrisburg, PA, for plaintiff.

### MEMORANDUM AND ORDER

KANE, District Judge.

Before the Court are several motions filed by Third–Party Defendant United States Fidelity & Guaranty Insurance Co. ("USF & G"), and two motions filed by Third–Party Defendant The Mark Insurance Agency, Inc. ("Mark Insurance Agency"). The motions have been fully briefed and are ripe for disposition. For the reasons set forth below, USF & G's motion for summary judgment will be granted, USF & G's two motions in limine and motion for leave to file cross-claim will be denied as moot, Mark Insurance Agency's motion for summary judgment will be granted, and Mark Insurance Agency's motion in limine will be denied as moot.

### I. Background

On June 28, 1995, Plaintiff Donegal Mutual Insurance Company ("Donegal") filed a six count complaint against Defendants Harry Grossman, Suzy Grossman and Pennco Trucking, Inc. ("Pennco"), a Penn-

sylvania based trucking company. Harry and Suzy Grossman, husband and wife, are the officers, directors and shareholders of Pennco.

This action arises out of a workers' compensation insurance policy issued by Donegal to Pennco. Prior to the issuance of the policy, Pennco had entered into a "leasing" arrangement with Transco Co. of Indiana ("Transco"), whereby all of Pennco's existing truck driving employees would be transferred to Transco and leased back to Pennco pursuant to the terms of an agreement which was executed on July 1, 1989. In conjunction with the leasing arrangement, Transco agreed to provide the truck drivers leased to Pennco with workers' compensation coverage. Furthermore, Transco provided Pennco with an engagement sheet to be executed by each truck driver entitled "Indiana Employee Extraterritorial Agreement." The form engagement sheet contained a choice of law clause pursuant to which Indiana's workers' compensation law would apply. The extraterritorial agreements were signed by Pennco's truck driving employees at the time the July 1, 1989 agreement was executed. For truck driving employees hired after July 1, 1989, Pennco agreed to have the driver execute the engagement sheet at the time of hire.[1]

Donegal alleges that Pennco, through the Grossmans, entered into this arrangement with Transco so that its drivers could be recorded as operating out of Indiana in order to obtain the benefits of lower workers' compensation rates there. The arrangement was purportedly entered into to permit Pennco to designate on an application for insurance coverage that with respect to its operations in Pennsylvania it did not employ truck drivers. As a result

---

1. Leasing arrangements in the trucking industry are not uncommon, including companies leasing equipment and employees.

of this plan, Donegal contends it has had to pay benefits for injured drivers for whom it never received premiums from Pennco. Specifically, four truck drivers filed workers' compensation claims and with respect to three of those truck drivers—Shaheem Burgh, Edison Wilt, and William Potter—a Pennsylvania workers' compensation judge determined that for purposes of workers' compensation coverage Pennco was their employer. As a result of those decisions Donegal by operation of Pennsylvania law became liable for the payment of workers' compensation benefits under the policy issued to Pennco by Donegal in the total amount of $127,922.32, and medical benefits in the total amount of $22,447.19. With regard to the fourth truck driver—John Young— on or about May 3, 1993, Donegal and Young entered into an agreement resolving Young's workers' compensation claim prior to the issuance of a decision by the workers' compensation judge. Young's workers' compensation benefits totaled $24,483.43 and his medical benefits totaled $13,752.60.

The initial application for insurance coverage submitted by Pennco was signed by Suzy Grossman as Secretary/Treasurer of Pennco on September 13, 1989. That application covered the period September 13, 1989, to September 13, 1990. The application states that she is a 50% shareholder of Pennco. That application requested coverage on behalf of Pennco for two sales employees with an estimated annual remuneration of $40,000.00, 10 clerical employees with an estimated annual remuneration of $320,000.00, and two employees who operated an apartment house with an estimated annual remuneration of $4200.00. The application was submitted to Donegal through The New Cumberland Insurance Agency, located in New Cumberland,

Pennsylvania. The application states that the total estimated annual premium for the policy is $2,153.00. At the top of the application the name given for the applicant is "Pennco Trucking, Inc." Under the section of the application designated "Nature of Business/Description of Operations" is written "Administrative Offices for General Commodities Trucking Co." On the application, it was noted: "All truckdrivers hired through Transco, Inc. *NOT* the insured. See attached certificate of insurance." Attached to the application was a certificate of insurance which indicates that Transco had obtained a workers' compensation policy from USF & G purportedly covering Transco's truck drivers. The USF & G policy was obtained through the Mark Insurance Agency, Inc. ("Mark Insurance Agency"), located in Chinchilla, Pennsylvania.

Counts 1 through 3 of Donegal's complaint alleged claims pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961–68. Count 4 alleged fraud; count 5 alleged breach of contract; and count 6 set forth a claim of unjust enrichment under state law. On August 25, 1995, Defendants filed a motion to dismiss the complaint. Count 1 of the complaint was dismissed by an order of the Honorable James F. McClure, Jr., issued on December 21, 1995.[2] In all other respects Defendants' motion to dismiss was denied.

On February 29, 1996, Defendants filed a third-party complaint in which they joined as third-party defendants Mark Insurance Agency, Transco and USF & G. An amended third-party complaint was filed on May 31, 1996. With regard to Transco and Mark Insurance Agency, Defendants' amended third-party complaint asserted the following three claims: (1) a

---

**2.** This case was originally assigned to the Honorable James F. McClure, Jr. On October 28, 1998, the case was reassigned to the undersigned.

claim under RICO (count 1); (2) a claim of fraud under state law (count 2); and (3) a claim of negligence under state law (count 3). On June 10, 1996, Mark Insurance Agency filed a motion to dismiss the amended third-party complaint. On June 23, 1997, Judge McClure issued an order granting in part and denying in part the motion. Count 1 of the amended third-party complaint was dismissed. The only claim asserted against USF & G is count 3 of the amended third-party complaint, which seeks recovery from USF & G for the asserted negligence of Mark Insurance Agency on the theory of *respondeat superior*.

The claims of Defendants against Transco, Mark Insurance Agency and USF & G are derivative of Donegal's claims against Defendants. That means that the potential liability of Transco, Mark Insurance Agency, and USF & G arises only upon Donegal's recovery of damages against the Defendants.

On June 11, 1999, Defendant Suzy Grossman, Third–Party Defendant Mark Insurance Agency and Third–Party Defendant USF & G filed motions for summary judgment. Shortly thereafter USF & G filed three additional motions: a motion for leave to file a cross-claim against Mark Insurance Agency, and two motions in limine. Defendant Mark Insurance Agency also filed a motion in limine.

On June 14, 2000, this Court reassigned the case to the Honorable Malcolm Muir for the purpose of deciding pending motions. On June 27, 2000, Judge Muir issued an Order granting Suzy Grossman's motion for summary judgment. That same order severed the third-party claims of Harry Grossman and Pennco against Transco, Mark Insurance Agency and USF & G for purposes of trial pursuant to Federal Rule of Civil Procedure 42(b), and denied USF & G and Mark Insurance Agency's motions without prejudice to re-

file. Thereafter, the Court set Donegal's claims against Harry Grossman and Pennco for trial in December 2000, and trial of the third-party claims for February 2001. By order dated November 17, 2000, the Court issued an order deeming USF & G and Mark Insurance Agency's motions refiled as of that date.

Shortly before jury selection and trial of the first-party claims, Donegal, Grossman and Pennco reached a settlement of Donegal's claims. Pursuant to that stipulated settlement, which was filed on January 24, 2001, Grossman and Pennco agreed to the entry of judgment against them on Donegal's claims, in an amount totaling approximately $480,000.00. The settlement further provides that in satisfaction of that judgment, Pennco and Grossman assign to Donegal all of their rights in the third-party claims they have asserted against Transco, Mark Insurance Agency, and USF & G, which remain pending in this case. Trial of those third-party claims remains scheduled for February 2001. Presently pending before the Court are: USF & G's motion for summary judgment, Mark Insurance Agency's motion for summary judgment, USF & G's motion for leave to file cross-claim, and motions in limine filed by USF & G and Mark Insurance Agency. Additional relevant facts will be set forth only as necessary in the discussion section below.

## II. *Discussion*

### A. *Legal Standard.*

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A factual dispute is "material" if it might

affect the outcome of the suit under the applicable law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis which would allow a reasonable fact-finder to return a verdict for the non-moving party. *See id.* at 249, 106 S.Ct. 2505. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *See White v. Westinghouse Elec. Co.,* 862 F.2d 56, 59 (3d Cir.1988).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." *Id.*

### B. *USF & G's Motion for Summary Judgment.*

As noted above, the only claim asserted against USF & G in this case is count 3 of the amended third-party complaint, which is a negligence claim. In count 3, Defendants allege that: Mark Insurance Agency negligently misrepresented to Defendants that the drivers leased by Transco to Pennco were validly insured with workers' compensation insurance, and negligently failed to notify or advise Pennco that the policy of workers' compensation insurance provided to the drivers leased by Transco

to Pennco excluded operations within the Commonwealth of Pennsylvania; Mark Insurance Agency was an authorized agent of USF & G; and Mark Insurance Agency was acting within the scope of its authority when it made the representations to Pennco. Accordingly, Defendants allege in count 3 that USF & G is liable for Mark's negligence on the theory of *respondeat superior.* USF & G sets forth several bases for its motion for summary judgment. Those bases will be addressed *seriatim.*

■ As an initial matter, USF & G requests that the Court examine the issue of its jurisdiction in this case. USF & G points out that the only federal claim in the third-party complaint is count 1, which asserted a RICO claim against Mark Insurance Agency, and that the Court granted Mark Insurance Agency's motion to dismiss that count on the ground that the claim was barred under the McCarran–Ferguson Act, 15 U.S.C. § 1012, by order dated June 23, 1997. USF & G further points out that the sole jurisdictional basis for Donegal's complaint in federal court is its RICO claims against Defendants. USF & G argues that the rationale of this Court's decision with regard to count 1 of the third-party complaint applies with equal force to the RICO counts in the original complaint, and that therefore, Donegal's RICO claims against Defendants should also be dismissed. USF & G argues that if those claims are dismissed, there would no longer be any federal claims pending in this case, and therefore, this Court would lack jurisdiction over this matter.

The Court first notes that, subsequent to the filing of USF & G's motion, Donegal and the Defendants reached a settlement of their claims, as discussed above. Accordingly, there are no longer any pending RICO claims in this case for the Court to

dismiss. However, that fact raises the same issue identified by USF & G—there are no longer any federal claims present in this case. 28 U.S.C. § 1367(a) is the source of this Court's supplemental jurisdiction over all the non-RICO claims in this case.

The statute provides that:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

. . . . .

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if -

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367.

Section 1367(c)(3) addresses the situation present here—where the court has dismissed all claims over which it has original jurisdiction. However, the statute does not mandate that the federal court remand all supplemental claims to the state court in this situation, as USF & G seems to envision; rather, it gives the

federal court discretion to determine whether or not to retain jurisdiction over the supplemental claims. In a case such as this one, which has been pending for five and a half years in this Court, and which is now only several weeks away from trial, the Court will exercise its discretion to retain jurisdiction over the supplemental claims on the basis of concerns of judicial economy and fairness to the parties. Accordingly, the Court is satisfied that it can and should properly retain jurisdiction over this matter.

■ USF & G's next argument is that, under the undisputed facts of this case, Defendants' negligence claim against it is barred by the applicable statute of limitations, and accordingly, USF & G is entitled to summary judgment. Essentially, USF & G argues that: a two year statute of limitations applies to Defendants' claim against it; Defendants became aware of their claim against USF & G on or before March 17, 1992, but failed to file a claim against it until February 29, 1996; accordingly, Defendants' negligence claim is barred by the statute of limitations.

■ The problem with USF & G's statute of limitations argument is that it fails to acknowledge the nature of the third-party claim asserted against it by Defendants. As this Court has noted several times before in this case, *see* June 27, 2000 Order at 7 and June 23, 1997 Memorandum at 4, Defendants' claims against USF & G, Transco and Mark Insurance Agency are derivative of Donegal's claims against the Defendants; *i.e.,* only if Donegal recovers damages against the Defendants will the Third–Party Defendants be potentially liable to Defendants. In such a situation, as a matter of law, third-party claims do not accrue until judgment is entered on the original claim. *See Resolution Trust Corp. v. Farmer,* 836 F.Supp. 1123, 1132 (E.D.Pa.1993) (under Rule 14,

third-party claims do not accrue until judgment entered on original claim); *Jackson v. Southeastern Pennsylvania Transp. Auth.*, 727 F.Supp. 965, 967 (E.D.Pa.1990) (under Rule 14, third-party plaintiff's claim for contribution not barred by statute of limitations since defendants not yet held liable to plaintiff). Accordingly, USF & G's request for summary judgment on this ground fails.

■ USF & G next argues that it is entitled to summary judgment on the ground that there is no genuine issue of material fact as to the lack of an agency relationship between USF & G and Mark Insurance Agency. Although the question of whether a principal-agent relationship exists is ordinarily one of fact for the jury, where the facts giving rise to the relationship are not in dispute, the question is one which is properly decided by the court. *See Breslin by Breslin v. Ridarelli*, 308 Pa.Super. 179, 454 A.2d 80, 82 (1982), *citing Juarbe v. City of Philadelphia*, 288 Pa.Super. 330, 431 A.2d 1073, 1076 (1981).

As noted above, Defendants' negligence claim against USF & G is based on its allegation that USF & G is liable for the negligence of Mark Insurance Agency because Mark was acting as USF & G's agent. Specifically, Defendants allege that when Mark Insurance Agency issued certificates of insurance showing that Transco possessed workers' compensation insurance coverage from USF & G, it negligently misrepresented to Defendants that the drivers leased by Transco to Pennco under the agreement were validly insured with workers' compensation coverage. Further, Defendants allege that Mark Insurance Agency negligently failed to advise

Defendants that such insurance excluded operations within the Commonwealth of Pennsylvania. Regardless of the merits of Defendants' claim of negligence against Mark Insurance Agency, the key component of its claim against USF & G is the existence of an agency relationship between USF & G and Mark Insurance Agency. This is so because Defendants have not asserted a direct claim against USF & G, but rather are seeking to hold USF & G liable for the alleged negligence of Mark Insurance Agency.[3]

The following facts are undisputed by Defendants and pertain to the relationship between USF & G and Mark Insurance Agency in this matter. The USF & G policy issued to Transco was written in the "assigned risk pool" or "involuntary market," after Mark Insurance Agency was unable to locate coverage for Transco in the voluntary market. Mark Insurance Agency prepared the various papers necessary to make the request that the Indiana assigned risk organization appoint an insurance carrier to provide the workers' compensation coverage for Transco. Under plan rules, the plan administrator randomly assigns the policy to a carrier. In this case, that carrier turned out to be USF & G. The President of Mark Insurance Agency, Malcolm B. Ferguson, testified that, in acting as a broker for Transco in attempting to locate workers' compensation insurance, Mark was not acting as an agent for USF & G. He testified that the assignment of the workers' compensation policy to USF & G was a random process over which he had no authority. He testified that the assignment "could have gone to anybody. It could have gone to Travel-

---

**3.** Although Defendants' brief in opposition to USF & G's motion discusses what they believe to be evidence of USF & G's misconduct sufficient to support a direct claim against USF & G, and argues that such facts preclude the entry of summary judgment, the fact is that the only claim asserted against USF & G in this action is a claim seeking to hold USF & G liable for the negligence of Mark Insurance Agency pursuant to the doctrine of *respondeat superior*.

ers or Aetna or Allstate or anybody. We had no—we had no influence in the selection of the company to whom this was assigned." USF & G has admitted that Mark Insurance Agency was an independent insurance agency authorized to distribute USF & G products.

Mark Insurance Agency issued at least three certificates of insurance to Pennco at the request of Transco. The certificates of insurance were dated August 3, 1989, December 6, 1990, and December 12, 1990, and each stated that USF & G afforded workers' compensation coverage to Transco. The certificates of insurance contained the following language: "[t]his certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage afforded by the policies below." Certificates of Insurance, Exhibits A–C to Defendants' Amended Third–Party Complaint. The certificates also stated:

> [t]his is to certify that the policies of insurance listed below have been issued to the insured named above for the policy period indicated. Notwithstanding any requirements, terms or conditions of any contract or other document with respect to which this certification may be issued or may pertain, the insurance afforded by the policies described herein is subject to all the terms, exclusions and conditions of such policies.

*Id.* Mark Insurance Agency also apparently issued numerous similar certificates to other trucking companies on behalf of Transco, also evidencing workers' compensation insurance provided by USF & G. The policy of USF & G dictates that copies of all such certificates of insurance be sent to the carrier every time such certificates are issued, and that was done, or should have been done, by Mark Insurance Agency each time it issued such a certificate.

■ With regard to the existence of an agency relationship, under Pennsylvania law, the liability of a principal to third parties for the act of an agent must rest upon (1) express authority, which is that which is directly granted; (2) implied authority, which is the right and obligation to do all that is proper, usual, and necessary to the exercise of authority actually granted; (3) apparent authority, which arises where the principal holds one out to be an agent by the principal's conduct; or (4) agency by estoppel. *Reifsnyder v. Dougherty*, 301 Pa. 328, 152 A. 98, 100 (1930). All parties agree that, under Pennsylvania law, merely acting as a broker in seeking insurance which is assigned pursuant to an assigned risk plan does not constitute an agency relationship between the insurance agency and the carrier to whom the policy is assigned.

■ However, Defendants argue that in this situation, "apparent authority" or "agency by estoppel" gave Mark Insurance Agency the power to make representations on behalf of USF & G to certificate holders like Pennco. Pennsylvania law defines "apparent authority" as the power to bind a principal which the principal has not actually granted but which the principal leads persons with whom the agent deals to believe he has granted the agent. *See Revere Press, Inc. v. Blumberg*, 431 Pa. 370, 246 A.2d 407, 410 (1968). Pennsylvania courts have described the test for such authority as "whether a man of ordinary prudence, diligence and discretion would have a right to believe and actually believe that the agent possessed the authority he purported to exercise." *Apex Financial Corp. v. Decker*, 245 Pa.Super. 439, 369 A.2d 483, 486 (1976) (citation omitted). "Agency by estoppel" arises where the principal "by his culpable negligence in failing to supervise the affairs of his agent, allows him to exercise powers not granted

to him, and so justifies others in believing he possesses the requisite authority." *Reifsnyder,* 152 A. at 100.

 The burden of showing authority to act for another "lies on the person who avails himself of such acts in order to charge a third person as principal ... and he must also show that he knew of the acts or conduct of the supposed agent at the time he relied on them." *Id.* (citations omitted). The Pennsylvania Supreme Court in *Reifsnyder* also stated that in order to establish the fact of agency, "[s]ome legal connection must appear from which the alleged principal could not escape the conclusion of delegated authority or agency. This may be shown by notice or actual knowledge, without disavowal, of the repeated acts or course of conduct of the one assuming to act as agent toward an unidentified person." *Id.*

The facts relied on by Defendants in support of their claim of "apparent authority" or "agency by estoppel" are the issuance of certificates of insurance by Mark Insurance Agency to Pennco, certifying that Transco employees were insured by a USF & G workers' compensation policy, and the fact that USF & G received copies of the certificates of insurance when they were so issued. As noted above, Defendants argue that Mark Insurance Agency was negligent in issuing these certificates of insurance without any notation as to an alleged exclusion or limitation of coverage within Pennsylvania. Defendants argue that USF & G, which had knowledge of the limits of the insurance policy issued to Transco, received copies of the certificates of insurance when issued and therefore, "had actual knowledge" of the alleged negligence of Mark Insurance Agency. Defendants argue that Pennco relied on the fact that USF & G never took any action in response to the Mark Insurance Agency's issuance of the certificates of insurance in support of its belief that Mark

Insurance Agency had the authority to certify the extent of coverage under the USF & G policy to Pennco.

Defendants find some support for an apparent authority argument in a Pennsylvania case, *Joyner v. Harleysville,* 393 Pa.Super. 386, 574 A.2d 664 (1990), which held that a "producer of record" who processed an application for insurance for an insurer pursuant to the Pennsylvania assigned risk plan may be deemed to have "apparent authority" to receive premium payments on behalf of the assigned insurance carrier. In reliance on the principle expressed in *Joyner,* Defendants attempt to argue that there are facts sufficient to support a finding that, viewed from the perspective of Pennco, Mark Insurance Agency had the "apparent authority" to bind USF & G with regard to any representations made regarding coverage in the certificates of insurance.

In *Joyner,* the court found the existence of apparent authority to receive premiums from the insured on behalf of the insurer under circumstances where the insurer had acquiesced in transmitting of premiums through the agent, even after becoming aware of problems with late payments and dishonored checks. Here, the only facts relied on by Defendants in support of their claim of "apparent authority" are the issuance of certificates of insurance by Mark Insurance Agency to Pennco, certifying that Transco employees were insured by a USF & G workers' compensation policy, and the fact that USF & G received copies of the certificates of insurance when they were so issued, and never took any action in response to their issuance. However, Defendants point to no facts in the record indicating that USF & G was aware of the circumstances under which Transco arranged for Mark Insurance Agency's transmittal of certificates of insurance to Pennco. Accordingly, the instant situation

is distinguishable from *Joyner* in a significant way. Viewed from Pennco's perspective, there is no evidence that USF & G took any action that could reasonably lead Pennco to conclude that, through the issuance of certificates of insurance, Mark Insurance Agency had authority to bind USF & G to some specific terms of coverage with regard to Transco drivers leased to Pennco. *See, e.g., Volunteer Fire Company of New Buffalo v. Hilltop Oil Company,* 412 Pa.Super. 140, 602 A.2d 1348, 1353 (1992) (absent knowledge on the part of the principal regarding nature and effect of agent's act, principal could not ratify agent's action through silence).

 Donegal points to some additional facts pertaining to the USF & G/Mark Insurance Agency relationship in an effort to show that Mark Insurance Agency had the "apparent authority" to bind USF & G with regard to any representations made to Pennco regarding coverage.[4] For example, Donegal points out that after the insurance policy was initially assigned to USF & G through the assigned risk plan, Mark Insurance Agency dealt with USF & G on a continuous basis, completing a supplemental application on behalf of Transco, requesting amendments and endorsements to the policy on behalf of Transco, and collecting premiums from Transco and remitting those premiums to USF & G. Further, Donegal points to some facts surrounding the renewal of the 1990 policy, where Mark Insurance Agency apparently forwarded a check to USF & G to satisfy the balance for the workers' compensation renewal and thereafter issued an insurance binder verifying that coverage was in effect as of a particular date. Further, Donegal points out that USF & G authorized Mark Insurance Agency to issue insurance certificates. Donegal apparently points to these facts in order to analogize the relationship between Mark Insurance Agency and USF & G to the insurance agent and insurer in *Joyner,* in an effort to demonstrate Mark Insurance Agency's "apparent authority" to make representations regarding coverage on behalf of USF & G.

However, the problem with Donegal's argument is that all the facts referred to by it really pertain to an argument that, viewed from the perspective of the insured, *Transco,* Mark Insurance Agency had the "apparent authority" to bind USF & G. Because Pennco's claim here is based on Mark Insurance Agency's alleged representations to Pennco via the issuance of certificates of insurance to it, in order to succeed on the "apparent authority" argument, Donegal must point to facts demonstrating that, viewed from *Pennco*'s perspective, Mark Insurance Agency had the "apparent authority" to make certain representations on behalf of USF & G through the issuance of certificates of insurance. However, none of the facts cited by Donegal assist it in making that showing, because a reasonable person in Pennco's position would have no knowledge of the relationship between Mark Insurance Agency and USF & G as it pertained to the insured, Transco.

**4.** USF & G argues that the Court should not consider the brief in opposition to its motion filed by Donegal, as it argues that Donegal is not an "adverse party" entitled to oppose its motion within the meaning of Federal Rule of Civil Procedure 56. USF & G points out that Donegal has not asserted any claim directly against USF & G. Despite that fact, given the derivative nature of the Defendants' claim against USF & G, and the fact that if the allegations against USF & G are proven, USF & G could be found liable for losses sustained by Donegal, the Court will consider the arguments advanced by Donegal in opposition to USF & G's motion for summary judgment. *See F & D Property Co. v. Alkire,* 385 F.2d 97 (10th Cir.1967) (for purposes of defense against plaintiff's complaint, a third-party defendant is in lawsuit as an adverse party to same extent as defendant).

Moreover, a larger problem with the "apparent authority" argument advanced by Defendants and Donegal is that the issue addressed by *Joyner*—whether or not a producer has apparent authority to receive premium payments on behalf of an insurance carrier under particular circumstances—is not the same as whether a producer has apparent authority to bind the insurance carrier with regard to representations regarding coverage, as Defendants allege here. In fact, in *Joyner* the court specifically noted that "the issue in this case does not involve a broker/producer's capacity ... to make representations on behalf of the insurer regarding substantive provisions of the policy ...." *Joyner*, 574 A.2d at 671.

While the facts here may support a claim that Mark Insurance Agency was authorized to issue certificates of insurance on behalf of USF & G, the issue of whether Mark Insurance Agency had the "apparent authority" or even the "implied authority" to bind USF & G with regard to specific terms of coverage different than those contained in the policy referenced in the certificate of insurance is another matter entirely. With regard to apparent authority, Defendants have pointed to no evidence that would support a reasonable belief on Pennco's part that Mark Insurance Agency—through the issuance of certificates of insurance—had the authority to bind USF & G to terms of coverage different than those expressed in the policy. As noted above, the certificates issued to Pennco specifically referenced the relevant insurance policy and expressly stated "[t]his certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage afforded by the policies below," and "[n]otwithstanding any requirements, terms or conditions of any contract or other document with respect to which this certificate may be issued or may pertain, the insurance afforded by the policies described herein is subject to all the terms, exclusions and conditions of such policies." Certificates of Insurance, Exhibits A–C to Defendants' Amended Third–Party Complaint.

The facts similarly fail to support a claim of "implied authority" to make representations regarding coverage contrary to those expressed in the policy. As noted above, "implied authority" is the right and obligation to do all that is proper and necessary to the exercise of authority actually granted. Here, any attempt to argue that the authority to issue certificates of insurance implies the authority to bind USF & G to specific terms of coverage different than those contained in the insurance policy must fail. This is so because here the relevant certificates of insurance explicitly informed the recipient of the certificates that the certificates did not amend or extend the coverage afforded by the policy in any way, and referred to the policy for all applicable terms, conditions, and exclusions.

For all of these reasons, there is no genuine issue of material fact as to the lack of an agency relationship between USF & G and Mark Insurance Agency which might result in liability to Defendants, and therefore, USF & G is entitled to summary judgment on this basis.

### C. *Mark Insurance Agency's Motion for Summary Judgment.*

Mark Insurance Agency also moves for summary judgment on the claims asserted against it by Defendants. As noted above, Defendants have asserted a negligence claim and a fraud claim against Mark Insurance Agency. Defendants' fraud claim is based on Defendants' allegation that when Mark Insurance Agency issued certificates of insurance to Pennco showing that Transco possessed

workers' compensation insurance coverage from USF & G, it misrepresented that the drivers leased by Transco to Pennco under the leasing agreement were validly insured with workers' compensation coverage. Defendants' negligence claim against Mark Insurance Agency appears to have two components: (1) that through the issuance of certificates of insurance, Mark Insurance Agency negligently misrepresented that the drivers leased by Transco to Pennco were validly insured with workers' compensation coverage; and (2) that Mark Insurance Agency negligently failed to advise Defendants that the USF & G policy excluded operations within the Commonwealth of Pennsylvania. *See* Amended Third–Party Complaint at 6–7.

Mark moves for summary judgment on the ground that there is no evidence that Mark Insurance Agency made any representation to Pennco to the effect that drivers leased from Transco to Pennco were insured by Transco's workers' compensation policy, and such a representation is key to Defendants' fraudulent and negligent misrepresentation claims. Further, Mark argues that it had no duty to Pennco other than providing accurate information on the certificates of insurance, and accordingly, it cannot be liable for any alleged failure to disclose certain information to Pennco.

 Under Pennsylvania law, the elements of fraud are as follows: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *See Bortz v. Noon,* 556 Pa. 489, 729 A.2d 555, 560 (1999). The elements of a negligent misrepresentation claim are: (1) a misrepresentation of a material fact; (2)

made under circumstances in which the misrepresenter ought to have known of its falsity; (3) with an intent to induce another party to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation. *See id.* Central to both causes of action is a representation alleged to be false.

Mark Insurance Agency bases its motion on the testimony of Defendant Harry Grossman, President of Pennco, who testified at his deposition that the sole basis for his belief that Mark Insurance Agency had represented that drivers leased from Transco to Pennco were insured by Transco's workers' compensation policy (the alleged actionable misrepresentation) was the issuance of the certificates of insurance in question, and not some other verbal or written representation made by Mark. *See* Grossman Dep. at 220, 225. The certificates of insurance relied on by Defendants contain the following language: "[t]his certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage afforded by the policies below." Certificates of Insurance, Exhibits A–C to Defendants' Amended Third–Party Complaint. The certificates further state:

> This is to certify that the policies of insurance listed below have been issued to the insured named above for the policy period indicated. Notwithstanding any requirement, term or condition of any contract or other document with respect to which this certificate may be issued or may pertain, the insurance afforded by the policies described herein is subject to all the terms, exclusion and conditions of such policies.

*Id.* The certificates of insurance issued to Pennco explicitly state that they provide no coverage greater than or inconsistent with the relevant insurance policy. Be-

cause Defendants have presented no evidence that any information on the certificates of insurance was inaccurate, and Defendants' misrepresentation claims are based on the certificates of insurance, Mark argues that Defendants' misrepresentation claims against it must fail.

The Court is persuaded by Mark Insurance Agency's argument. Defendants and Donegal attempt to put a number of additional facts before the Court in an effort to demonstrate that the issuance of the certificates of insurance constituted a misrepresentation when viewed in the larger context of Defendants' interaction with Mark Insurance Agency; however, those facts are not material to the misrepresentation claims Defendants have asserted against Mark. This is so because Defendant Grossman has admitted that the sole basis for his belief that the Transco drivers leased to Pennco were insured under the Transco workers' compensation policy (the alleged actionable misrepresentation) was the issuance of the certificates of insurance, not some other communication or representation made by Mark. Because no party has alleged or demonstrated that the certificates themselves contain inaccurate information, Defendants' misrepresentation claims must fail.

■ Defendants and Donegal make an additional argument regarding the fraud claim that Defendants have asserted against Mark Insurance Agency. They point to case law suggesting that to be actionable, a misrepresentation need not be in the form of a positive assertion, but may consist of concealment of that which should have been disclosed. *See Wilson v. Donegal Mutual Ins. Co.*, 410 Pa.Super. 31, 598 A.2d 1310 (1991). They argue that Mark Insurance Agency in effect "concealed" the fact that drivers leased from Transco to Pennco were excluded from coverage under the Transco policy. However, as noted by Mark Insurance Agency,

there is no evidence in the record that Mark Insurance Agency "concealed" any fact from Pennco. Moreover, Mark argues that it cannot be liable for allegedly concealing something which it had no duty to disclose. Under *Storti v. Minnesota Mutual Life Ins. Co.*, 331 Pa.Super. 26, 479 A.2d 1061 (1984), an insurance agent's duty with regard to certificate holders is met as long as the information contained on the certificates of insurance is accurate and is not contrary to the policy. As noted above, Defendants have presented no evidence that the information contained on the certificates of insurance is inaccurate or somehow contrary to the policy, and the certificates themselves directed the holder to the policy for the terms of coverage.

■ With regard to the "failure to notify" portion of Defendants' negligence claim, Mark Insurance Agency similarly cannot be liable for any failure to notify Defendants in the absence of some duty to disclose certain information. As just discussed above, an insurance agent's duty with regard to certificate holders is met as long as the information contained on the certificate of insurance is accurate and is not contrary to the policy. *See Storti*, 479 A.2d at 1063.

Further, although Defendants and Donegal recite additional facts designed to show that Mark Insurance Agency was engaged in some sort of conspiracy with Transco to defraud Pennco and other trucking companies throughout the United States, those facts are legally irrelevant to the instant motion, as no one has asserted a conspiracy claim against Mark Insurance Agency. Moreover, additional facts regarding Mark Insurance Agency's interactions with other trucking companies is similarly irrelevant to Defendants' misrepresentation claims against Mark Insurance Agency, which by their nature concern only alleged misrepresentations made to

Defendants. For all of the reasons discussed above, there is no genuine issue of material fact as to the absence of a misrepresentation made by Mark Insurance Agency to Defendants; accordingly, Mark Insurance Agency is entitled to summary judgment on Defendants' claims against it.

One final matter remains to be addressed. In its motion, Mark Insurance Agency also seeks summary judgment on any direct claims brought by Donegal against it; however, Mark acknowledges that Donegal has asserted no direct claims against it in this action. As there is no pending claim asserted against Mark Insurance Agency by Donegal, Mark's request for summary judgment on this nonexistent claim must be denied.

## III. *Order*

Accordingly, for the reasons discussed in this memorandum, IT IS ORDERED THAT:

(1) USF & G's Motion for Summary Judgment (Doc. No. 71) on the only claim asserted against it, count 3 of the Amended Third–Party Complaint, is GRANTED. The Clerk of Court is directed to enter judgment in favor of USF & G and against Defendants on count 3 of the Amended Third–Party Complaint.

(2) USF & G's Motion for Leave to File Cross-claim for Indemnity Against Third–Party Defendant Mark Insurance Agency (Doc. No. 119) is DENIED as moot.

(3) USF & G's Motion in Limine to Preclude Donegal and Pennco From Offering Evidence of or Making Reference to USF & G's Role in the Worker's Compensation Proceedings (Doc. No. 123) is DENIED as moot.

(4) USF & G's Motion in Limine to Preclude or Limit the Proposed Testimony of Expert Constance Foster and to Bar Plaintiff From Offering Evidence in Support of Defendant's Claim against USF & G (Doc. No. 125) is DENIED as moot.

(5) Mark Insurance Agency's Motion for Summary Judgment (Doc. No. 75) on the remaining claims asserted against it, counts 2 and 3 of the Amended Third–Party Complaint, is GRANTED. The Clerk of Court is directed to enter judgment in favor of Mark Insurance Agency and against Defendants on counts 2 and 3 of the Amended Third–Party Complaint.

(6) Mark Insurance Agency's Motion in Limine to Preclude or Limit the Testimony of Constance Foster (Doc. No. 127) is DENIED as moot.

(7) The pretrial conference scheduled for January 31, 2001 at 10:00 AM is CANCELED. Jury selection and trial currently scheduled for February 5, 2001, and February 12, 2001, respectively, are CANCELED.

(8) On or before February 15, 2001, Plaintiff shall file a written report notifying the Court of the status of its claim against Third–Party Defendant Transco.