J-A24006-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| PENN OUTDOOR SERVICES, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HARLEYSVILLE INSURANCE | : | |
| COMPANY OF NEW JERSEY AND | : | |
| WHARTON, LYON & LYON | : | No. 2921 EDA 2022 |
| | : | |
| | : | |
| APPEAL OF: WHARTON, LYON & | : | |
| LYON D/B/A WHARTON ATLANTIC | : | |
| A/K/A WHARTON INSURANCE A/K/A | : | |
| WHARTON GROUP | : | |

Appeal from the Judgment Entered October 12, 2022
In the Court of Common Pleas of Philadelphia County
Civil Division at No:  191003027

BEFORE:  STABILE, J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY STABILE, J.:                    **FILED JUNE 27, 2024**

Appellant, Wharton, Lyon & Lyon d/b/a/ Wharton Atlantic a/k/a Wharton Insurance a/k/a Wharton Group ("Wharton"), appeals from the October 12, 2022 judgment entered against it and in favor of Appellee Penn Outdoor Services ("Penn").[1]  We affirm.

The record reveals that Penn agreed by contract to provide snow removal services for an apartment complex located in Princeton, New Jersey. Penn subcontracted that job to Longford Landscape and Excavation

_____

[1] Harleysville Insurance Company of New Jersey has been dismissed from this action and is not participating in this appeal.

("Longford"). The contract between Penn and Longford included a hold harmless clause in Penn's favor with regard to the work to be performed by Longford pursuant to the contract. Therefore, the Penn/Longford contract required from Longford a certificate of insurance ("COI") naming Penn as an additional insured under Longford's applicable liability insurance policy. Wharton is Longford's insurance broker, and Harleysville Insurance Company ("Harleysville") is Longford's liability insurer. Wharton provided the COI to Penn.

The instant action was precipitated by a slip and fall at the Princeton, New Jersey apartment complex. Asya Ghant was injured there on February 10, 2017, and filed suit in Mercer County, New Jersey, against Penn and other parties. Penn sought defense and indemnity from Longford and Harleysville, but Harleysville denied coverage, claiming that the Ghant litigation discovery process revealed that Ghant's injuries were due to Penn's independent negligence. Harleysville also claimed that Penn's insurance under its policy was not primary, but excess coverage to Penn's own insurance because the Penn/Longford contract did not specify otherwise. Harleysville contended that Longford was compliant with its contractual obligations to Penn by procuring excess coverage.

Penn eventually settled Ghant's suit for $650,000.00 after having incurred more than $200,000.00 in legal fees. On October 25, 2019, Penn filed the instant lawsuit against Harleysville and Wharton alleging breach of

contract, equitable reformation of contract, negligence, and bad faith (42 Pa.C.S.A. § 8371). A jury verdict of $713,600.00 in Penn's favor was entered on April 6, 2022. On April 13, 2022, Wharton filed a motion for j.n.o.v. and/or a new trial. The trial court heard oral argument on Wharton's motion on September 21, 2022, and denied relief at the conclusion of argument. The verdict was reduced to judgment on October 12, 2022. This timely appeal followed.

Wharton presents five questions:

1. Whether the trial court erred and/or abused its discretion in finding that judgment n.o.v., or else a new trial, was not required despite the material variance between the pending complaint and the substance of the comes on which the case was tried to verdict?

2. Whether the trial court erred and/or abused its discretion in finding that judgment n.o.v., or else a new trial, was not required despite the evidence wholly establishing that [Penn] was an additional insured under the Harleysville policy, and wholly disproving the assertion that any other type of additional insured endorsement would have provided coverage to [Penn] for the underlying claim.

3. Whether the trial court erred and/or abused its discretion in finding judgment n.o.v., or else a new trial, was not required despite the overwhelming proof that Wharton did not misrepresent—negligently or otherwise—any fact on the [COI], but that it rather stated the facts-of-coverage clearly and accurately, as admitted by [Penn's] own expert at trial.

4. Whether the trial court erred and/or abused its discretion in allowing [Penn's] expert, over objection , to testify as to his interpretation of an insurance contract, and in thereafter denying Wharton's request for a new trial.

5. Whether the trial court erred and/or abused its discretion in denying a new trial and rejecting Wharton's contention that the jury's verdict was against the weight of the evidence.

Wharton's Brief at 4-5.

We begin by setting forth the strictures governing our review. We reverse an order denying a j.n.o.v. motion only if we conclude that the trial court committed an error of law or abuse of discretion that controlled the outcome of the case. ***Greco v. Myers Coach Lines, Inc.***, 199 A.3d 426, 430 (Pa. Super. 2018).

> There are two bases upon which a [JNOV] can be entered; one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that, even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in his favor. Whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

> […]

> The proper standard of review for an appellate court when examining the lower court's refusal to grant a [JNOV] is whether, when reading the record in the light most favorable to the verdict winner and granting that party every favorable inference therefrom, there was sufficient competent evidence to sustain the verdict. Questions of credibility and conflicts in the evidence are for the trial court to resolve and the reviewing court should not reweigh the evidence.

***Id.***

Wharton's first assertion of error is that j.n.o.v. was warranted because of a material variance between Penn's complaint and the substance of the case it presented to the jury. Wharton claims that Penn pled that Wharton failed to make Penn an additional insured on Longford's Harleysville policy but then

- 4 -

tried the case on an entirely different theory—that Penn was an additional insured, but that Penn's coverage was improperly subject to limitations that excluded coverage of Ghant's alleged injuries. Wharton's Brief at 16.

> A variance denotes difference and in reference to legal proceedings[,] it refers to a disagreement or difference between the allegations made and the proof shown, not in the sense that there is a failure of proof, but that, contrary to the fundamental principle of good pleading and practice, the proof fails to materially correspond to the allegations. A material variance consists of a departure in the evidence from the issues on which the cause of action must depend.
>
> For purposes of determining whether a claimed or apparent discrepancy between pleadings and proof constitutes a variance, the entire pleadings and evidence should be considered. Generally, in order to constitute a variance, the discrepancy must exist between the allegations and proofs of the particular party, with the result that a party is not permitted to introduce evidence that is inconsistent with or fails to correspond to the allegations made by that party.
>
> The modern rules of pleading and practice are relatively liberal. Consequently, the impact of variance may be diminished by the preference for a liberal[,] if not informal[,] evaluation of pleadings emphasizing the determination of cases based upon their merits rather than based on mere technicalities, which policy, for example, may allow a party to cure a variance by offering, during or after trial, to amend the pleadings to conform to the proof.
>
> General pleading allegations which are not objected to because of their generality, may have the effect of extending the available scope of a party's proof, such that the proof would not constitute a variance, beyond that which the party might have been permitted to give under a more specific statement.

*Young v. Lippl*, 251 A.3d 405, 418 (Pa. Super. 2021) (**quoting *Graham v. Campo***, 990 A.2d 9, 13-14 (Pa. Super. 2010), ***appeal denied***, 16 A.3d 504 (Pa. 2011)). A variance between pleadings and proof will be considered

material if the defendant has been misled; that is, if the proof imposes a different burden on the defendant and/or sets up a different cause of action than the one alleged. *Id.*

We begin with a review of Penn's amended complaint. Penn alleged that its contract with Longford, wherein Longford promised to hold Penn harmless from claims arising out of Longford's duties under the contract, was an "insured contract" under Longford's Harleysville policy. Amended Complaint, 11/25/20, at ¶¶ 9-10. Penn also alleged that its contract with Longford required Longford to name Penn as an additional insured on the Harleysville policy. *Id.* at ¶ 11. Penn alleged that it "reasonably expected […] that Longford's Harleysville Policy would afford it primary, non-contributory coverage as an additional insured for claims arising out of Longford's work." *Id.* at ¶ 12.

Penn attached the pertinent documents to its amended complaint. The contract between Penn and Longford is attached as Exhibit B to Penn's amended complaint and provides:

> Subcontractor agrees to indemnify and save and hold harmless Penn and Penn's clients/customers from and against all claims for damages arising out of the performance of Subcontractor's duties under this Agreement and agrees to, at Subcontractor's expense, defend any suit or action brought against Penn or Penn's clients/customers on account of such claim or damage.

*Id.* at Exhibit B, ¶ 7(a). Penn's coverage as an additional insured under Longford's Harleysville policy was to be set forth in an endorsement. *Id.* at

Exhibit B, ¶ 7(b). Endorsement CG-7524 to Longford's Harleysville policy, attached to Penn's amended complaint as Exhibit C, provides, among other things, that an additional insured is an organization for whom Longford works under a "written contract." *Id.* at Exhibit C, ¶ A. The additional insured is insured with regard to liability caused "in whole or in part" by Longford. *Id.* at Exhibit C, ¶¶ A, B. Regarding other insurance, endorsement CG-7524 provides, "If specifically required by the written contract or agreement referenced in Paragraph A above, any coverage provided by this endorsement to an additional insured shall be primary and any other valid and collectible insurance available to the additional insured shall be non-contributory with this insurance." *Id.* at ¶ D.1.

Penn alleged that Wharton provided a COI identifying Penn as an additional insured per endorsement CG-7524. *Id.* at ¶ 26, Exhibit H.[2] Penn alleged that, by issuing the COI, Wharton led Penn to believe that it was an additional insured under Longford's Harleysville policy. *Id.* at ¶ 32. Penn further alleged that Wharton's failure to secure coverage for Penn as an additional insured led to Harleysville's denial of Penn's claim. *Id.* at ¶ 36.

In summary, Penn expressly alleged, in ¶ 12 of its complaint, that it believed its coverage as an additional insured under Longford's Harleysville policy would be primary and non-contributory. We are cognizant of Wharton's

_____

[2] The COI is attached to Penn's Amended Complaint as Exhibit H.

arguments that the hold harmless clause in ¶ 7(a) of the Penn/Longford contract did not expressly use the terms primary and non-contributory, and that endorsement CG-7524 provided that the additional insured coverage would be primary if "specifically required" by the underlying contract. But in discerning the existence of a material variance between the complaint and trial strategy, we are to undertake a "liberal, if not informal" view of the pleadings, rather than place undue emphasis on technicalities. *Young*, 251 A.3d at 418. Because Penn's complaint expressly alleged that it reasonably expected its coverage to be primary and noncontributory,[3] we discern no material variance between Penn's complaint and its trial strategy. Wharton's first argument fails.

Next, Wharton argues that the trial court should have granted j.n.o.v. because the evidence established that Penn was an additional insured, as required by the Penn/Longford contract, and therefore Wharton discharged its obligations to Penn. Instead, Wharton believes the trial evidence established that Penn was not covered for the Ghant claim despite its status as an additional insured under Longford's policy, because the Ghant claim arose from Penn's independent negligence. This argument piggybacks on Wharton's

_____

[3] Wharton's reliance on *Reynolds v. Thomas Jefferson Univ. Hosp.*, 676 A.2d 1025 (Pa. Super. 1996), *appeal denied*, 700 A.2d 442 (Pa. 1996), wherein the plaintiff in a medical malpractice suit shifted strategy during trial to challenge actions of a different doctor than the one against whom he alleged malpractice in the complaint, is misplaced. Here, Penn tried the case as alleged against the named defendants.

previous argument that Penn's complaint addressed only the existence, rather than the scope, of its coverage under Longford's policy. Because we have already rejected that argument, and because Appellant cites no law in support of this argument[4] and therefore provides no substantive basis for relief, we discern no basis for relief.

With its third argument, Wharton claims that the trial court erred in denying its motion for j.n.o.v. because the evidence overwhelmingly established that Wharton made no negligent misrepresentation. In fact, Wharton argues, the COI merely identified Penn as an additional insured without making any representations as to the scope of Penn's coverage.

> Negligent misrepresentation requires proof of: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and; (4) which results in injury to a party acting in justifiable reliance on the misrepresentation.

*Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999). Wharton claims no misrepresentation was made, let alone a misrepresentation with intent to induce another to act on it.

Wharton relies on *Donegal Mut. Ins. Co. v. Grossman*, 195 F.Supp.2d 657 (M.D.Pa. 2001) for persuasive authority. There, Pennco, the defendant trucking company, transferred the employment of its drivers to Transco, an

_____

[4] Appellate Rule of Procedure 2119(c) requires citation to pertinent authority in support of arguments. Pa.R.A.P. 2119(c).

Indiana company, and then leased the drivers' services from Transco. Transco was to provide workers compensation insurance for the drivers. A Pennsylvania workers compensation judge nonetheless decided that four drivers injured while working in Pennsylvania were Pennco employees for purposes of workers' compensation coverage. Plaintiff Donegal, Pennco's insurer, thereby became liable for the payment of workers' compensation benefits to the injured drivers. Pennco's insurance application to Donegal did not seek coverage for the drivers, and an attached COI stated that Pennco's drivers were employees of Transco and that Transco had obtained workers' compensation insurance coverage for the drivers. *See id.* at 660-61. Donegal sued Pennco, and Pennco filed a third party complaint against Transco and Mark Insurance Agency, which had issued COIs identifying Transco's insurance coverage for the drivers. The Federal District Court rejected Pennco's negligent misrepresentation claim, writing that the COIs stated expressly that the recipient of the COI would receive coverage consistent with the underlying policy. *Id.* at 670. The COI at issue in *Donegal* and in the instant case contain the following, identical language:

> This is to certify that the policies of insurance listed below have been issued to the insured named above for the policy period indicated. Notwithstanding any requirement, term or condition of any contract or other document with respect to which this certificate may be issued or may pertain, the insurance afforded by the policies described herein is subject to all the terms, exclusions and conditions of such policies.

- 10 -

*Id.*; Amended Complaint, 11/25/20, at Exhibit H.[5]  In essence, then, in *Donegal*, as in the instant case, the COI stated that the insured's coverage would be consistent with any policy exclusions regardless of any other written contract.  On that basis, the Federal District Court in *Donegal* accepted the insurance broker's argument that the plaintiff had failed to establish any misrepresentation or inaccuracy in the COI that could support the plaintiff's claim for negligent misrepresentation.  *Donegal*, 195 F.Supp.2d at 671. Wharton argues that the same result should obtain in this case.

But the instant case is distinguishable.  In addition to the language quoted just above, the COI represents that "Certholder is included as additional insured for general liability as respects work performed by named insured per policy form CG7524 12/10 **as required by written contract**." Amended Complaint, 11/25/20, at Exhibit H.  And, as explained above, the written contract between Penn and Longford provided that Longford would hold Penn harmless "from and against all claims for damages arising out of the performance of Subcontractor's duties under this Agreement[.]"  *Id.* at Exhibit B, ¶ 7(a).  The record reveals that Susan Yigiter, who issued the COI on behalf of Wharton, testified that she did **not** recall reviewing endorsement CG-7524 in its entirety to determine whether it contained any exclusions or otherwise complied with the requirements set forth in the Penn/Longford

_____

[5]  The COI is attached to Penn's Amended Complaint as Exhibit H.

contract prior to issuing the COI.  N.T. Trial, 4/1/22, at 70, 75-76.  Penn was never informed that Longford's Harleysville liability policy provided only excess coverage to Penn.  *Id.* at 76.  Considering these facts in light of the standard of review, which requires us to consider the record in the light most favorable to Penn, as verdict winner, and granting Penn all reasonable inferences (*Greco,* 199 A.3d at 430), the record supports a finding that Wharton was negligent with regard to its representation in the COI that the terms of the endorsement were "as required by contract."  That is, the jury could reasonably have concluded that Penn reasonable expected primary, and not excess coverage; that Wharton's representations on the COI were therefore negligent representations of material fact made with the intent of inducing Penn's reliance thereon; and that Penn relied to its detriment on Wharton's representations.  We discern no reversible error in the trial court's decision to deny Wharton's j.n.o.v. motion.

Next, Wharton argues that the trial court erred in permitting Penn's snow and ice management expert to testify about contract interpretation. Admission of expert testimony is within the discretion of the trial court. *Nazarak v. Waite*, 216 A.3d 1093, 1111 (Pa. Super. 2019).  We reverse only if the trial court abuses its discretion.  Wharton does not make an abuse of discretion argument in its brief.  Wharton notes that contract interpretation is a question for the courts, not an issue of fact to be submitted to the jury. *Pops PCE TT, LP. V. R&R Restaurant Grp., LLC*, 208 A.3d 79, 87 (Pa.

Super. 2019), ***appeal denied***, 223 A.3d 656 (Pa. 2020). Wharton claims the trial court erred in permitting the jury to interpret the Penn/Longford contract and in allowing an unqualified expert testimony on its proper interpretation.

Penn produced the testimony of Jeffrey Evans, who co-owns a snow and ice removal company, and who has been in the snow and ice removal business for 50 years. N.T. 4/1/22, at 86-87. Evans conceded that he was "not an expert in insurance[,]" and that he had no experience as a broker, agent, underwriter, or claims handler. ***Id.*** at 93. The trial court admitted Evans' testimony for the limited purpose of explaining "snow and ice management and for some testimony regarding contractual obligations that a snow and ice company might make or would make with regards to protecting itself." ***Id.*** at 100. To that end, Evans testified that Longford, as the "boots-on-the-ground" subcontractor, is expected to carry primary insurance with the contactor as an additional insured. ***Id.*** at 106. According to Evans, the language in ¶ 7(b) of the Penn/Longford contract is industry standard, and that he has never seen a contract specify that the subcontractor's insurance must be primary. ***Id.*** at 102-05.

In essence, Evans' testimony established the industry standard for the insurance requirements included in contracts such as the Penn/Longford contract. By stating that the pertinent portions of the Penn/Longford contract are industry standard, and that the expectation is for the general contractor to have primary coverage as an additional insured on the subcontractor's

policy, Evan's did not, contrary to Wharton's argument, offer a legal interpretation of any portion of the Penn/Longford contract. Wharton's fourth argument fails.

In its final argument, Wharton claims the jury's verdict was against the weight of the evidence. Wharton argues that, because Penn's own negligence was responsible for Ghant's injury, Penn would not have been covered even if it had primary coverage under Longford's Harleysville policy. As noted above, the evidence in this case reflected alternate bases on which Harleysville denied coverage. In one scenario, Ghant's injuries were due to Penn's own negligence. In the other, Penn's insurance through Longford's policy was excess only. These facts were presented to the jury, and the jury found a breach of duty based on Wharton's failure to procure primary coverage for Penn as an additional insured under Longford's policy. Thus, Wharton's weight of the evidence argument rests on its own favorable interpretation of the facts, and on its assertion, already rejected above, that excess coverage was sufficient to discharge its obligations to Penn. This argument fails.[6]

For the foregoing reasons, we discern no reversible error in the trial court's denial of Wharton's motion for judgment notwithstanding the verdict.

---

[6] We note, also, that Wharton has failed to develop its weight of the evidence argument with citation to pertinent authority, as required by Pa.R.A.P. 2119(b). Wharton argument includes only two citations, the first to establish that it need not have raised this issue before the jury was discharged, and the second to support its conclusionary argument that a new trial is warranted so that right may be given another opportunity to prevail.

Judgment affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/27/2024